82 A.3d 161

Brittany ELLIS

v.

HOUSING AUTHORITY OF BALTIMORE CITY.

Tyairra JOHNSON

v.

Housing Authority of Baltimore City.

Nos. 16, 17, Sept. Term, 2013.

Court of Appeals of Maryland.

Nov. 26, 2013.

Reconsideration Denied Jan. 23, 2014.

334

Saul E. Kerpelman (Suzanne C. Shapiro, Saul E. Kerpelman & Associates, P.A., Baltimore, MD), on brief, for appellant in No. 16, Sept. Term, 2013.

Suzanne C. Shapiro (Saul E. Kerpelman & Associates, P.A., Baltimore, MD), on brief, for appellant in No. 17, Sept. Term, 2013.

Frank J. Mastro and J. Marks Moore, III (Semmes Bowen & Semmes, P.C., Baltimore, MD), on brief, for appellee.

Barbara Wachter Needle, James T. Massey, Reno & Cavanaugh, PLLC, Washington, DC, brief of Amici Curiae, the Maryland Association of Housing and Redevelopment Agen-

cies and Member Housing Authorities, on behalf of appellee Housing Authority of Baltimore City.

Argued before: BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and WATTS, JJ.

WATTS, J.

This opinion consolidates two cases in which Brittany Ellis ("Ellis") and Tyairra Johnson ("Johnson") (together, "Appellants"), separately sued the Housing Authority for Baltimore City ("HABC"), Appellee, in the Circuit Court for Baltimore City ("the circuit court") for negligence and violations of the Maryland Consumer Protection Act arising out of Appellants' alleged exposure to lead paint in properties that HABC owned and operated.

We must decide: (I) whether the circuit court erred in concluding that Appellants did not substantially comply with the notice requirement of the Local Government Tort Claims Act ("the LGTCA"), Md.Code Ann., Cts. & Jud. Proc. Art. (1987, 2013 Repl.Vol.) ("CJP") § 5–301 *et seq.;* (II) whether the circuit court abused its discretion in concluding that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement; and (III) whether, as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice requirement violates Article 19 of the Maryland Declaration of Rights.

For the reasons below, we hold that: (I) the circuit court properly concluded that Appellants did not substantially comply with the LGTCA notice requirement; (II) the circuit court did not abuse its discretion in concluding that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement; and (III) as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights.

## BACKGROUND

### A. *Ellis v. HABC*

On January 10, 1989, Ellis was born. She first resided with her mother at 1004 North Washington Street. In 1989, Ellis and her mother moved to 2708 Giles Road. On September 10, 1990, Ellis and her mother moved to 26 South Exeter Street. All three properties were owned and operated by HABC.

On April 3, 1992, the University of Maryland Pediatric Ambulatory Center ("the University") tested Ellis's blood-lead level and reported 14 micrograms per deciliter ($\mu$g/dL). In a letter to Ellis's mother dated June 9, 1992, the University stated: "Your child recently was tested for lead. His/her lead level is *not* dangerously high. However, the results show that he/she may be at risk for high lead in the future. He/she should have her lead retested every 3–4 months." (Emphasis in original).

On June 19, 1992, the University tested Ellis's blood-lead level and reported 12 $\mu$g/dL. A University form signed by Dr. J. Rubin states that Ellis was seen on June 19, 1992, "for repeat lead testing (blood lead test was *14* on 4/3/92)[.]" (Emphasis in original). An HABC form entitled "Summary of Interviews" pertaining to Ellis's mother states that on June 24, 1992, HABC received a "form letter from [the University], from Dr. Rubin … regarding [Ellis]'s test result. Dr. Rubin stated [Ellis]'s level of 14 was an indication there was some exposure to lead, however, the level was not cause for treatment, only frequent testing." On April 27, 1993, Ellis and her mother moved to 725 George Street, which HABC owned and operated.

On January 7, 2010 (approximately eighteen years after Ellis's first blood-lead level test occurred), in the circuit court, Ellis sued HABC[1] for negligence and violations of the Mary-

---

1. Ellis also sued Ernesto Gonzalez and C.B. & A., Inc. concerning a property located at 2814 Miles Avenue. On May 18, 2010, the circuit court dismissed Ellis's claims against C.B. & A., Inc. On June 14, 2012, Ellis dismissed her claims against Gonzalez.

land Consumer Protection Act arising out of Ellis's alleged exposure to lead paint at 1004 North Washington Street, 2708 Giles Road, 26 South Exeter Street, and 725 George Street.[2]

During discovery, HABC produced a "tenant folder" pertaining to Ellis's mother's tenancy at 26 South Exeter Street and 725 George Street, containing the form entitled "Summary of Interviews." Nothing in the "tenant folder," however, indicates that Ellis's mother complained of or expressed concern about the presence of lead paint in any of the premises occupied by Ellis.

On March 13, 2012, HABC moved for summary judgment, contending that Ellis failed to strictly or substantially comply with the LGTCA notice requirement. HABC also argued that Ellis did not show good cause for her failure to comply with the LGTCA notice requirement. In an affidavit that was attached to the motion for summary judgment, William M. Peach III, Director of the Housing Management Administration at HABC, averred that he was "not aware of any written complaints, letters, notices or related documentation received from [ ] Ellis or anyone in her family prior to January 20, 2010 regarding her intention to bring a claim against [ ] HABC for alleged exposure to lead-based paint at the subject properties."

On April 23, 2012, the circuit court conducted a hearing and granted the motion for summary judgment, concluding that Ellis did not: (1) substantially comply with the LGTCA notice requirement; or (2) show good cause for her failure to comply with the LGTCA notice requirement. Ellis noted a timely appeal. On February 22, 2013, while the appeal was pending in the Court of Special Appeals, this Court granted *certiorari* on its initiative. *See Ellis v. Hous. Auth. of Balt. City,* 430 Md. 344, 61 A.3d 18 (2013).

---

**2.** Ellis also sued HABC for negligence and violations of the Maryland Consumer Protection Act arising out of Ellis's alleged exposure to lead paint at a fifth property, 475 George Street. In this Court, however, Ellis raises no issue as to her alleged exposure to lead paint at 475 George Street.

## B. *Johnson v. HABC*

On July 1, 1990, Johnson was born. Johnson first resided with her mother at 1620 Booker Court, which HABC owned and operated. In an affidavit dated March 13, 2012, Johnson's mother averred that, "from 1990 through 1996[,]" "every day for several hours at a time[,]" Johnson visited her grandmother at 601 North Brice Street, which HABC owned and operated. In her affidavit,[3] Johnson's mother averred that, when Johnson

> was approximately three[-]years[-]old[, Johnson's mother] noticed chipping paint at 1620 Booker Court.... [Johnson's mother] saw [Johnson] put paint in [her] mouth[ ]. [Johnson's mother] immediately complained to a housing manager of [HABC] about the chipping paint.... [Johnson's mother] told the [h]ousing [m]anager that [she] was concerned that the chipping paint ... contained lead and that [Johnson] had been exposed to lead when [she] put the paint in [her] mouth[ ]. [Johnson's mother] asked the [h]ousing [m]anager to come fix the deteriorated paint.... [Johnson's mother] threatened to sue [HABC] if [HABC] did not fix the violations causing injuries to [Johnson].
>
> * * *
>
> No one from any health clinic informed [Johnson's mother] that [ ] Johnson had any lead in her blood until she was seen at the Kennedy Krieger Institute ... in 2000.
>
> * * *
>
> In 2000[,] Kennedy Krieger Institute informed [Johnson's mother] that [ ] Johnson had suffered from elevated blood[-]lead levels[.]

On June 24, 2011, in the circuit court, Johnson sued HABC for negligence and violations of the Maryland Consumer Protection Act arising out of Johnson's alleged exposure to lead paint at 1620 Booker Court and 601 North Brice Street.[4]

---

3. For clarity, we reorganize the averments in Johnson's mother's affidavit in chronological order.

4. Johnson also sued HABC for negligence and violations of the Maryland Consumer Protection Act arising out of Johnson's alleged exposure

On March 1, 2012, HABC moved for summary judgment, contending that Johnson failed to substantially comply with the LGTCA notice requirement. HABC also argued that Johnson did not show good cause for her failure to comply with the LGTCA notice requirement.

On April 23, 2012, the circuit court conducted a hearing and granted the motion for summary judgment, concluding that Johnson did not: (1) substantially comply with the LGTCA notice requirement; or (2) show good cause for her failure to comply with the LGTCA notice requirement. Johnson noted a timely appeal. On March 5, 2013, while the appeal was pending in the Court of Special Appeals, this Court granted *certiorari* on its own initiative. *See Johnson v. Hous. Auth. of Balt. City,* 430 Md. 644, 62 A.3d 730 (2013).

## DISCUSSION

### I.

Appellants contend that the circuit court erred in concluding that they did not substantially comply with the LGTCA notice requirement. Specifically, Appellants argue that HABC had timely and presumed notice of their injuries because HABC was: (1) legally required to inspect properties for deteriorated lead paint; and (2) generally aware of the frequency of lead paint actions. Ellis asserts that HABC had actual notice of her claim because HABC received the results of her first blood-lead level test via Dr. Rubin's letter. Johnson maintains that HABC had notice of her claim because her mother orally complained timely to an HABC housing manager about chipping paint and threatened to sue HABC if it did not fix the chipping paint.

HABC responds that the circuit court properly concluded that Appellants did not substantially comply with the LGTCA notice requirement. Specifically, HABC contends that it

to lead paint at 823 Clintwood Court. In this Court, however, Johnson raises no issue as to her alleged exposure to lead paint at 823 Clintwood Court.

lacked notice of Ellis's claim because the results of Ellis's first blood-lead level test did not notify HABC of her intent to sue. HABC argues that it lacked notice of Johnson's claim because Johnson's mother's alleged complaint was oral.

■ Where there is no genuine dispute of material fact, an appellate court reviews without deference a trial court's grant of summary judgment. *See Koste v. Town of Oxford*, 431 Md. 14, 25, 63 A.3d 582, 589 (2013) ("If no genuine dispute of material fact exists ... [t]he standard of review of a trial court's grant of a motion for summary judgment on the law is *de novo*[.]" (First alteration in original) (citations and internal quotation marks omitted)).

■ An appellate court reviews without deference a trial court's conclusion as to whether a plaintiff substantially complied with the LGTCA notice requirement. *See generally Faulk v. Ewing*, 371 Md. 284, 308, 808 A.2d 1262, 1278 (2002) (Applying a *de novo* standard of review, this Court reversed the trial court's judgment and held that a plaintiff substantially complied with the LGTCA notice requirement.).

Under the LGTCA, "an action for unliquidated damages may not be brought against a local government ... unless the notice of the claim ... is given within 180 days after the injury." CJP § 5-304(b)(1). "The notice shall be in writing and shall state the time, place, and cause of the injury." CJP § 5-304(b)(2). "[T]he notice shall be given to the corporate authorities of the defendant local government." CJP § 5-304(c)(4).[5]

■ Even if a plaintiff does not strictly comply with the LGTCA notice requirement, a plaintiff substantially complies with the LGTCA notice requirement where: (1) the plaintiff makes "some effort to provide the requisite notice"; (2) the plaintiff does "in fact" give some kind of notice; (3) the notice

---

5. Although the General Assembly has recodified the LGTCA since 1992 (when Ellis's first blood-lead level test occurred), the General Assembly did not change the substance of the above language. To avoid confusion, we refer to the current version of the LGTCA.

"provides ... requisite and timely notice of facts and circumstances giving rise to the claim"; and (4) the notice fulfills the LGTCA notice requirement's purpose, which is

> to apprise [the] local government of its possible liability at a time when [the local government] could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and [the local government's] responsibility in connection with it.

*Faulk*, 371 Md. at 298–99, 808 A.2d at 1272–73 (ellipsis in original) (citations and internal quotation marks omitted).

For example, in *Faulk, id.* at 307–08, 808 A.2d at 1277, this Court held that the plaintiff substantially complied with the LGTCA notice requirement where, in a letter to a local government's insurer dated twelve days after his injury, the plaintiff provided "apparently sufficient information about [his injury] to enable a timely investigation to occur and notify[the insurer] that [the plaintiff] expected some type of compensation from [the local government] for his" injury.

By contrast, in *Halloran v. Montgomery Cnty. Dep't of Pub. Works*, 185 Md.App. 171, 187–88, 968 A.2d 1104, 1114, *cert. denied*, 409 Md. 48, 972 A.2d 861 (2009), the Court of Special Appeals held that a plaintiff did not substantially comply with the LGTCA notice requirement where the plaintiff mailed a letter to the "Highway Maintenance" division of a county's department of public works. In the letter, the plaintiff stated that she had been injured on a road, and demanded that the road be fixed. *Id.* at 187, 968 A.2d at 1114. In the letter, however, the plaintiff did not "state that she had a 'claim' against the [c]ounty[,]" or "that the [c]ounty was responsible for damages resulting from" her injury. *Id.* at 187, 968 A.2d at 1114. Additionally, the plaintiff did not mail the letter to any "other entity, particularly the county council, county law office, or 'corporate authority[.]' " *Id.* at 187, 968 A.2d at 1114.

Here, we conclude that the circuit court properly concluded that Appellants did not substantially comply with the LGTCA notice requirement.[6]

## A. *Ellis v. HABC*

 Ellis did not substantially comply with the LGTCA notice requirement. HABC has no record of any complaint by Ellis or any of her family members regarding chipping, flaking or peeling lead paint. In fact, the record does not indicate that, before Ellis sued HABC, she or her mother **ever** contacted HABC about deteriorated paint conditions in any property, or that Ellis or her mother ever alleged that property owned or operated by HABC was the cause or source of Ellis's injury *(i.e.,* Ellis's elevated blood-lead level).[7] A plaintiff does not substantially comply with the LGTCA notice requirement where the plaintiff does not "in fact" give some kind of notice. *Faulk,* 371 Md. at 299, 808 A.2d at 1272 (citation omitted).

Our conclusion is unchanged by the circumstance that HABC received the results of Ellis's first blood-lead level test. Neither the test results themselves, nor the manner in which HABC received the test results, indicated that Ellis intended to sue HABC. A plaintiff does not substantially comply with the LGTCA notice requirement where purported notice does not "apprise [the] local government of its possible liability[.]" *Faulk,* 371 Md. at 298, 808 A.2d at 1272 (citation and internal quotation marks omitted).

---

**6.** It is undisputed that Appellants did not strictly comply with the LGTCA notice requirement. No member of Ellis's family or Johnson's family ever gave HABC notice of a claim in writing. CJP § 5–304(b)(2).

**7.** It is not relevant that: (1) in an agreement between HABC and Ellis's mother dated April 27, 1993, Ellis's mother stated that she would "notify [HABC] immediately if the unit in which [she] live[d] ha[d] flaking, chipping or peeling paint"; and (2) in answers to HABC's interrogatories, Ellis stated that, "[d]uring [her] tenancy, there was a problem with flooding water and [HABC] had to enter the property . . . to make [ ] repairs. [HABC] was in the property and could observe the condition of the deteriorated paint." There simply is no record of Ellis's mother ever notifying HABC of an intent to initiate an action, or of an issue as to any conditions associated with lead paint at any property that Ellis occupied.

The record does not reveal how HABC received the results of Ellis's first blood-lead level test. An HABC form entitled "Summary of Interviews" pertaining to Ellis's mother simply states: "Rec'd form letter from [the University], from Dr. Rubin ... regarding [Ellis]'s test result." Nowhere in the record is any indication that any member of Ellis's family sent or delivered the results of Ellis's first blood-lead level test to HABC. We do not decide whether Ellis would have substantially complied with the LGTCA notice requirement had the record clearly indicated that a member of Ellis's family sent or delivered the results of Ellis's first blood-lead level test—and/or any additional information—to HABC.

## B. *Johnson v. HABC*

 Johnson did not substantially comply with the LGTCA notice requirement. It is true that, before Johnson sued HABC, Johnson's mother allegedly orally complained to an HABC housing manager about chipping paint and threatened to sue HABC if it did not fix the chipping paint. For two reasons, however, Johnson's mother's alleged oral complaint did not apprise HABC of its possible liability.

First, Johnson's mother threatened to sue HABC **if it did not fix the chipping paint;** thus, Johnson's mother essentially advised that the threatened action against HABC would be a landlord-tenant action (in which Johnson's mother sought that HABC fix the chipping paint), not a lead paint action (in which Johnson sought damages for her alleged injury resulting from exposure to lead paint). Simply put, through her alleged oral complaint, Johnson's mother neither explicitly nor implicitly indicated that she intended to sue HABC regarding any injury. A plaintiff does not substantially comply with the LGTCA notice requirement where the plaintiff demands that a local government fix a defect, but neither explicitly nor implicitly indicates that the plaintiff intends to sue the local government regarding an injury resulting from the defect[8] *See Halloran,* 185 Md.App. at 187, 968 A.2d at 1114 (The Court of

---

8. This standard does not unduly burden potential lead paint plaintiffs. We do not hold that, to substantially comply with the LGTCA notice

Special Appeals held that a plaintiff did not substantially comply with the LGTCA notice requirement where the plaintiff demanded that a county's department of public works fix a road's defect, but did not explicitly or implicitly indicate that the plaintiff intended to sue the county for her injury resulting from the road's defect.).

Second, Johnson's mother did not learn of Johnson's injury (*i.e.*, Johnson's elevated blood-lead level) until approximately six or seven years after her oral complaint; thus—in addition to Johnson's mother's failure to give notice of an intent to initiate a lead paint action—at the time of Johnson's mother's oral complaint, it was not possible for Johnson's mother to give notice of an injury allegedly caused by HABC.[9]

---

requirement, a plaintiff must **state** that the plaintiff intends to sue a local government. Instead, we hold that, to substantially comply with the LGTCA notice requirement, a plaintiff must **indicate**—either explicitly or implicitly—that the plaintiff intends to sue the local government **regarding an injury.** A plaintiff does not "apprise a local government of its possible liability[,]" *Faulk*, 371 Md. at 298, 808 A.2d at 1272 (citation and internal quotation marks omitted), where the plaintiff simply demands that the local government fix a defect. Additionally, a plaintiff does not "provide[ ] . . . requisite and timely notice of facts and circumstances giving rise to [a] claim[,]" *id.* at 299, 808 A.2d at 1272–73 (ellipsis in original) (citation and internal quotation marks omitted), where the plaintiff threatens to sue the local government, but neither explicitly nor implicitly indicates that the plaintiff intends to sue the local government regarding any injury.

9. It is true that Johnson's mother told the HABC housing manager that Johnson put paint in her mouth. However, Johnson's injury was not her putting paint in her mouth; instead, Johnson's injury was her elevated blood-lead level. *See generally Ross v. Hous. Auth. of Balt. City*, 430 Md. 648, 668, 63 A.3d 1, 12 (2013) ("The theory of causation . . . can be conceived of as a series of links: (1) the link between the defendant's property and the plaintiff's exposure to lead; (2) the link between specific exposure to lead and the elevated blood[-]lead levels, and (3) the link between those blood[-]lead levels and the injuries allegedly suffered by the plaintiff."); *Mitchell v. Hous. Auth. of Balt. City*, 200 Md.App. 176, 211, 183, 26 A.3d 1012, 1033, 1016, *reconsideration denied* (Sept. 13, 2011), *cert. denied*, 423 Md. 452, 31 A.3d 920 (2011) (For purposes of the LGTCA notice requirement, the Court of Special Appeals equated the time of the plaintiff's injury with the time at which "the first [blood-lead level] test result showed [that the plaintiff] had been exposed to lead[.]").

## C. *Ellis v. HABC* & *Johnson v. HABC*

We reject Appellants' contention that HABC had notice of their injuries because HABC was legally required to inspect properties for deteriorated lead paint and generally aware of the frequency of lead paint actions involving older rental dwellings in Baltimore City. A plaintiff does not substantially comply with the LGTCA notice requirement where the plaintiff does not "in fact" give some kind of notice. *Faulk*, 371 Md. at 299, 808 A.2d at 1272 (citation omitted). Thus, commonsensically, a plaintiff does not substantially comply with the LGTCA notice requirement simply by virtue of the circumstance that: (1) a local government is legally required to inspect for a potential source of injury; and/or (2) the local government is generally aware of the frequency of the type of action that the plaintiff plans to initiate. Essentially, Appellants ask us to except lead paint actions from the LGTCA notice requirement; however, the right to decide to except lead paint actions from the LGTCA notice requirement belongs to the General Assembly, not the Judiciary. *See Rios v. Montgomery Cnty.*, 386 Md. 104, 137, 872 A.2d 1, 20 (2005) ("[C]raft[ing] an addendum to the LGTCA ... is the prerogative of the General Assembly.").

For the above reasons, we hold that the circuit court properly concluded that Appellants did not substantially comply with the LGTCA notice requirement.

## II.

Appellants contend that the circuit court abused its discretion in concluding that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement. Specifically, Appellants argue that they showed good cause for their failure to comply with the LGTCA notice requirement because they were minors at the time of their injuries, and because HABC was: (1) legally required to inspect properties for deteriorated lead paint; and (2) generally aware of the frequency of lead paint actions. Ellis asserts that she showed good cause for her failure to comply with the LGTCA notice

requirement because HABC received the results of her first blood-lead level test. Johnson maintains that she showed good cause for her failure to comply with the LGTCA notice requirement because her mother orally complained to an HABC housing manager about chipping paint and threatened to sue HABC if it did not fix the chipping paint.

HABC responds that the circuit court did not abuse its discretion in concluding that Appellants failed to show good cause for their failure to comply with the LGTCA notice requirement. Specifically, HABC contends that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement because Appellants' mothers did not diligently prosecute their claims while Appellants were minors. HABC argues that minority does not *per se* constitute good cause for failure to comply with the LGTCA notice requirement.

■ An appellate court reviews for abuse of discretion a trial court's conclusion as to whether a plaintiff showed good cause for the plaintiff's failure to comply with the LGTCA notice requirement. *See generally Prince George's Cnty. v. Longtin,* 419 Md. 450, 467, 19 A.3d 859, 869 (2011), *reconsideration denied* (June 16, 2011) ("Th[e] 'good cause' exception leaves the [trial] courts some discretion in enforcing the notice requirement[.]").

■ "[U]pon motion and for good cause shown the court may entertain the suit even though the required notice was not given." CJP § 5–304(d). A plaintiff shows good cause for his or her failure to comply with the LGTCA notice requirement where the plaintiff "prosecute[s] his [or her] claim with th[e] degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rios,* 386 Md. at 141, 872 A.2d at 22 (citation and internal quotation marks omitted).

■ A plaintiff shows good cause for his or her failure to comply with the LGTCA notice requirement where the plaintiff reasonably relies on "misleading" representations by a

local government. *Id.* at 141–42, 872 A.2d at 23 (citation omitted). In certain other jurisdictions, a plaintiff shows good cause for his or her failure to comply with a tort claims act's notice requirement where the plaintiff was: (1) responsible for "excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard)"; (2) suffering a "serious physical or mental injury"; (3) "locat[ed] out-of-state"; (4) unable "to retain counsel in [a] case[ ] involving complex litigation"; or (5) "ignoran[t] of the statutory notice requirement[.]" *Id.* at 141, 872 A.2d at 22–23 (citations and internal quotation marks omitted).

██ However, a plaintiff does not *per se* show good cause for the plaintiff's failure to comply with the LGTCA notice requirement where the plaintiff is a minor at the time of the injury. *See id.* at 144, 872 A.2d at 24 ("[M]inority does not constitute good cause *per se* [.]"). In *Rios, id.* at 144–45, 872 A.2d at 24, this Court held that the trial court did not abuse its discretion in concluding that a plaintiff did not show good cause for his failure to comply with the LGTCA notice requirement where: (1) the plaintiff was a minor at the time of his injury; (2) the plaintiff's mother had "limited knowledge of English"; (3) the plaintiff sued a local government ten years after his injury; and (4) there had been no investigation during the ten years after the plaintiff's injury, even though there were "available means to investigate" and the local government "did not impede or hamper any possibility of investigation or conceal material facts."

By contrast, in *Moore v. Norouzi*, 371 Md. 154, 179, 807 A.2d 632, 647 (2002), in an opinion that consolidated two cases, this Court held that the trial court abused its discretion in concluding that plaintiffs did not show good cause for their failure to comply with the LGTCA notice requirement. In both cases, the plaintiffs communicated with a government contractor that provided "claims administration services" to the local government. *Id.* at 159, 807 A.2d at 635. In one case, the government contractor told the plaintiff that "it was 'investigating the facts surrounding' " his injury. *Id.* at 181,

807 A.2d at 648. In the other case, the government contractor told the plaintiff that it had "received formal notification of" his injury. *Id.* at 181, 807 A.2d at 649. This Court concluded "that an ordinarily prudent person under the circumstances of [both] cases, reasonably could, and would, rely on the representations of the" government contractor. *Id.* at 179, 807 A.2d at 647.

Here, we conclude that the circuit court did not abuse its discretion in concluding that Appellants failed to show good cause for their failure to comply with the LGTCA notice requirement.

### A. *Ellis v. HABC*

The circuit court did not abuse its discretion in concluding that Ellis did not show good cause for her failure to comply with the LGTCA notice requirement. As early as 1992, Ellis's mother knew that Ellis's blood-lead level was 14 μg/dL. However, the record does not indicate that Ellis or her mother took **any** action regarding Ellis's potential claim until 2010, when Ellis sued HABC. A plaintiff does not show good cause for his or her failure to comply with the LGTCA notice requirement where the plaintiff does not "prosecute[ ] his [or her] claim with th[e] degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rios*, 386 Md. at 141, 872 A.2d at 22 (citation and internal quotation marks omitted).

### B. *Johnson v. HABC*

The circuit court did not abuse its discretion in concluding that Johnson did not show good cause for her failure to comply with the LGTCA notice requirement. As the circuit court noted, Johnson's mother did not "become aware of [Johnson's] elevated blood[-lead] level until 2000." The record does not indicate that Johnson or her mother took **any** action regarding Johnson's potential claim between 2000 and 2011, when Johnson sued HABC.

Our conclusion is unchanged by the circumstance that, in either 1993 or 1994, Johnson's mother allegedly orally com-

plained to an HABC housing manager about chipping paint and threatened to sue HABC if it did not fix the chipping paint. Until 2000 (when Johnson's mother learned of Johnson's elevated blood-lead level), Johnson's mother did not know that Johnson had an injury that had been caused by exposure to lead paint, and thus had a potential claim against HABC; at the time of Johnson's mother's oral complaint, it was not possible for Johnson's mother to prosecute a lead paint claim on Johnson's behalf at all. Upon learning of Johnson's elevated blood-lead level in 2000, Johnson's mother failed to give notice to HABC pursuant to the LGTCA notice requirement.

### C. *Ellis v. HABC* & *Johnson v. HABC*

We reject Appellants' contention that the circuit court abused its discretion in concluding that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement because Appellants were minors at the time of their injuries. A plaintiff does not *per se* show good cause for his or her failure to comply with the LGTCA notice requirement because the plaintiff is a minor at the time of the injury. *See Rios,* 386 Md. at 144, 872 A.2d at 24 ("[M]inority does not constitute good cause *per se*[.]"). Upon careful consideration of Appellants' contentions, we perceive no reason to disavow or stray from this Court's holding in *Rios, id.* at 144, 872 A.2d at 24. Even considered together with their mothers' actions (or, more accurately, lack thereof) regarding their potential claims, Appellants' minority does not constitute good cause for their failure to comply with the LGTCA notice requirement.

We reject Appellants' contention that the circuit court abused its discretion in concluding that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement because HABC was: (1) legally required to inspect properties for deteriorated lead paint; and (2) generally aware of the frequency of lead paint actions. In determining whether a plaintiff shows good cause for the plaintiff's failure to comply with the LGTCA notice require-

ment, a court considers circumstances that relate to the **plaintiff**, not the local government.[10] *See generally Rios,* 386 Md. at 141, 872 A.2d at 22 (A plaintiff shows good cause for his or her failure to comply with the LGTCA notice requirement where the **plaintiff** "prosecute[s] his [or her] claim with th[e] degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." (Citation and internal quotation marks omitted)); *see also id.* at 141, 872 A.2d at 22–23 (As to good cause for failure to comply with the LGTCA notice requirement, this Court listed five "categories[,]" all of which arise out of circumstances that relate to the **plaintiff.** (Citations omitted)).

For the above reasons, the circuit court did not abuse its discretion in concluding that Appellants did not show good cause for their failure to comply with the LGTCA notice requirement.[11]

## III.

■■■ Appellants contend that, as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice

---

**10.** Absent misleading representations by a defendant to a claimant or representations that a claimant relies on to his or her detriment, a good cause finding is grounded on the actions of the claimant and whether those actions demonstrate that the claimant pursued his or her claim diligently-namely, "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader,* 361 Md. 258, 271, 761 A.2d 56, 63 (2000) (citation and internal quotation marks omitted); *see also Moore,* 371 Md. at 179, 807 A.2d at 647.

**11.** We need not discuss whether the lack of notice prejudiced HABC. Prejudice to a local government due to lack of notice is at issue only if a plaintiff shows good cause for the plaintiff's failure to comply with the LGTCA notice requirement. *See Halloran,* 185 Md.App. at 189, 968 A.2d at 1115 ("[I]t was *not* the [local government]'s burden to [show lack of prejudice.] ... Such inquiry only arises ... whe[re] a [plaintiff] has shown good cause [for the plaintiff's failure to comply with the LGTCA notice requirement], and the burden, by statute, shifts to the local government to show that its defense has been prejudiced." (Citing CJP § 5–304(d)) (emphasis in original) (internal quotation marks omitted)).

requirement violates Article 19 of the Maryland Declaration of Rights. Specifically, Appellants argue that HABC's operation of public housing is a proprietary—as opposed to governmental—activity because HABC acts like a private landlord. Appellants assert that the LGTCA notice requirement's restriction upon a minor's access to the courts is unreasonable because the minor is dependent on a parent or guardian to comply with the LGTCA notice requirement.

HABC responds that, as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights. Specifically, HABC contends that HABC's operation of public housing is a governmental—as opposed to proprietary—activity because, by statute, HABC's purpose is to promote the welfare of the whole public. Alternatively, HABC argues that, even if its operation of public housing is a proprietary activity, the LGTCA notice requirement's restriction upon a minor's access to the courts is reasonable because the LGTCA notice requirement is not unduly burdensome.[12]

 An appellate court reviews without deference a trial court's conclusion as to whether a law is constitutional. *See Neustadter v. Holy Cross Hosp. of Silver Spring, Inc.*, 418 Md. 231, 239, 13 A.3d 1227, 1232 (2011) ("[I]n reviewing a possible violation of a constitutional right, this Court conducts its own independent constitutional analysis. We perform a de novo constitutional appraisal in light of the particular facts of the case at hand[.]" (Citations and internal quotation marks omitted)).

Article 19 of the Maryland Declaration of Rights states:

[E]very man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without

---

12. In this Court, the Maryland Association of Housing and Redevelopment Agencies and its member housing authorities filed an *amicus* brief in each case, contending that, as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights.

sale, fully without any denial, and speedily without delay, according to the Law of the Land.

 In an action arising out of a governmental—as opposed to proprietary—activity by a local government, as applied to a minor plaintiff, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights. *See Rios,* 386 Md. at 120, 872 A.2d at 10 (This Court held that the LGTCA notice requirement "is constitutional under [Article 19 of] the Maryland Declaration of Rights as applied to minors where the underlying local governmental action was governmental as opposed to proprietary in nature." (Footnote omitted)).

This is so because "the LGTCA does not restrict a traditional remedy or access to the courts[.]" *Id.* at 139, 872 A.2d at 21 (internal quotation marks omitted). Before the General Assembly enacted the LGTCA, local governments were immune from liability for torts that arose out of governmental—as opposed to proprietary—activities; however, through the LGTCA, the General Assembly waived such local governmental immunity. *See id.* at 125, 872 A.2d at 13 ("[P]rior to the enactment of the LGTCA, local governments enjoyed immunity from tort liability only with respect to ... activity classified as governmental.... This limitation on [local governmental] immunity ... remains applicable today under the LGTCA." (Internal quotation marks omitted)).[13] Because the General Assembly waived local governmental immunity, the General Assembly could set conditions precedent (including the LGTCA notice requirement) to the right of action under the LGTCA. *See generally Rios,* 386 Md. at 127, 872 A.2d at 14 ("[T]he LGTCA notice requirement[is] a condition precedent to maintaining an action against a local government[.]" (Citations omitted)). Accordingly, any decision to except minors

---

**13.** Both before and after the General Assembly enacted the LGTCA, local governments were not immune to torts that arose out of proprietary—as opposed to governmental—activities. *See Rios,* 386 Md. at 124, 872 A.2d at 12 ("A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a ... proprietary capacity[.]" (Citation and internal quotation marks omitted)).

from the LGTCA notice requirement belongs to the General Assembly, not the Judiciary. *See id.* at 137, 872 A.2d at 20 ("[A] minor is dependent upon an adult to comply with the [LGTCA] notice [requirement], but, we cannot craft an addendum to the LGTCA to toll the requirement. That is the prerogative of the General Assembly.").

■ By contrast, it appears that, in an action arising out of a proprietary—as opposed to governmental—activity by a local government, as applied to a minor plaintiff, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights if and only if the LGTCA notice requirement's "restriction upon access to the courts . . . is [ ]reasonable[,]" *id.* at 137, 872 A.2d at 20—in *Rios, id.* at 139 n. 17, 872 A.2d at 21 n. 17, in *dicta,* this Court suggested as much.

■ An activity is governmental where the activity "is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the [local government], and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest[.]" *Id.* at 128–29, 872 A.2d at 15 (citation omitted).

For example, in *City of Balt. v. Balt. Gas & Elec. Co.,* 232 Md. 123, 131, 192 A.2d 87, 91 (1963), this Court held that HABC engaged in a governmental activity where HABC closed streets due to the construction of public housing. This Court noted that, by statute, HABC: (1) "reduce[s] o[r] eliminate[s conditions that] constitute a menace to health, safety, morals and welfare of the residents of the State"; (2) "exercise[s] public and *essential governmental functions*"; and (3) cannot operate for profit. *Id.* at 131, 192 A.2d at 91 (emphasis in original) (citations and internal quotation marks omitted). Thus, this Court concluded that HABC and the public housing "[we]re specifically authorized by the [General Assembly], [we]re solely for the public benefit, [we]re not operated for profit or as a source of revenue, ha[d] no element of private interest and [we]re to promote the public health, welfare and morals." *Id.* at 132, 192 A.2d at 91.

By contrast, in *Reed v. Mayor & City Council of Balt.*, 171 Md. 115, 118, 188 A. 15, 16 (1936), this Court held that a local government engaged in a proprietary activity where it operated a market. This Court noted that the local government "deriv[ed] revenue" from the market by renting the market's stalls. *Id.* at 118, 188 A. at 16.

Here, we unequivocally hold that, as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights, as the lead paint action arises out of a governmental—as opposed to proprietary—activity *(i.e.,* HABC's operation of public housing). *See Rios,* 386 Md. at 120, 872 A.2d at 10.

For four reasons, HABC's operation of public housing is a governmental activity. First, according to statute, HABC "exercises public and essential **governmental** functions[.]" Md.Code Ann., Hous. & Cmty. Dev. Art. (2006) ("HCD") § 15–104(1) (emphasis added). Second, HABC's operation of public housing is sanctioned by legislative authority. *See* HCD § 12–502(b)(6) ("A[housing] authority may . . . carry out the purposes of the [housing] authority."); HCD §§ 15–103(5), 15–103(1) (HABC's purpose is "to remedy" the "shortage of decent, safe, and sanitary housing" in Baltimore City.). Third, HABC's operation of public housing tends to benefit the public health and promote the welfare of the whole public. *See* HCD §§ 15–103(2), 15–103(3) ("[O]vercrowded and congested housing [and tenants'] pay[ing] too much of their income for shelter" "require too much public money to be spent for public health and safety, fire and accident protection, crime prevention and punishment, and other public services and facilities[.]"). Fourth, HABC's operation of public housing does not cause profit or emolument to inure to HABC. *See* HCD § 12–401(a)(2) ("[A housing] authority . . . may not operate for profit or as a source of revenue to the political subdivision."). An activity is governmental where the activity "is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the [local government], and tends to benefit the public health and promote the welfare of

the whole public, and has in it no element of private interest[.]" *Rios*, 386 Md. at 128–29, 872 A.2d at 15 (citation omitted);[14] *accord Mitchell v. Hous. Auth. of Balt. City*, 200 Md.App. 176, 202, 26 A.3d 1012, 1028, *reconsideration denied* (Sept. 13, 2011), *cert. denied*, 423 Md. 452, 31 A.3d 920 (2011) (The Court of Special Appeals stated that "operating and maintaining public housing" is a governmental activity.).

We reject Appellants' contention that, under *Reed*, 171 Md. at 118, 188 A. at 16, HABC's operation of public housing is a proprietary activity. In *Reed*, *id.* at 118, 188 A. at 16, this Court held that a local government engaged in a proprietary activity where it operated a market because the local government "deriv[ed] revenue" from the market by renting the market's stalls. *Reed*, *id.* at 118, 188 A. at 16, does not apply where (as here) a local government cannot profit from an activity. *See* HCD § 12–401(a)(2).[15]

We reject Appellants' contention, made at oral argument, that a lead paint action arises out of a proprietary activity— namely, HABC's compliance with its legal requirement to inspect properties for deteriorated lead paint. HABC's compliance with its legal requirement to inspect properties for deteriorated lead paint is part and parcel of HABC's operation

---

**14.** Here, we decline to apply *Tinsley v. Washington Metro. Area Transit Auth.*, 429 Md. 217, 224, 55 A.3d 663, 667 (2012), in which this Court interpreted the Washington Metropolitan Area Transit Authority Compact to determine whether a particular activity was governmental or proprietary, using primarily authority from the United States Court of Appeals for the District of Columbia Circuit and the District of Columbia Court of Appeals.

**15.** Appellants misinterpret *Reed*, 171 Md. at 118, 188 A. at 16, to mean that a court should consider the underlying injury in determining whether an activity is governmental or proprietary. In *Reed*, *id.* at 119, 188 A. at 16, a slip-and-fall case, this Court stated that the local government had a duty to keep the market "reasonably safe for public travel." However, this Court did not consider the local government's duty in its holding that operation of the market was a proprietary activity; instead, this Court's holding was based only on the circumstance that the local government "deriv[ed] revenue" from the market. *Id.* at 118, 188 A. at 16.

of public housing. As discussed above, HABC's operation of public housing is a governmental activity.

We are unpersuaded by the cases from other jurisdictions on which Appellants rely. For example, in *Hous. Auth. of City of Providence v. Oropeza*, 713 A.2d 1262, 1264, 1263 (R.I.1998), the Supreme Court of Rhode Island held that providing security in public housing is a proprietary activity because "the activity [at issue] was one that a private person or corporation would be likely to carry out." (Alteration in original) (citation and internal quotation marks omitted). In contrast to housing authorities in Rhode Island, HABC does what private enterprise has failed to do. *See* HCD § 15–103(4) ("[T]he shortage of decent, safe, and sanitary housing cannot be wholly relieved through private enterprise[.]"). Similarly, in *Virginia Elec. & Power Co. v. Hampton Redevelopment & Hous. Auth.*, 217 Va. 30, 225 S.E.2d 364, 369 (1976), the Supreme Court of Virginia held that operation of public housing is a proprietary activity because: (1) "the [housing a]uthority assumes the role ordinarily occupied by a private landlord"; (2) "the [housing a]uthority ... performs functions which could as well be performed by private enterprise"; (3) operation of public housing "in[ ]ures to the benefit of a few rather than to 'the common good of all' "; and (4) "the necessity for the service bears only incidental relation to the protection of the life, health, property, and peace of the citizens of the whole municipality where the service is performed." (Citations omitted). In contrast to housing authorities in Virginia, HABC: (1) does not occupy a private landlord's role, as HABC "may not operate for profit or as a source of revenue[,]" HCD § 12–401(a)(2); (2) does what private enterprise has failed to do, *see* HCD § 15–103(4) ("[T]he shortage of decent, safe, and sanitary housing cannot be wholly relieved through private enterprise[.]"); and (3) benefits the common good of all and protects the life, health, property, and peace of the citizens throughout the whole of the municipality by reducing the amount of "public money ... spent for public health and safety, fire and accident protection, crime prevention and punishment, and other public services

and facilities[.]" HCD § 15–103(3). In short, Maryland (and Baltimore City specifically) takes a fundamentally different view of the public housing necessity than do Rhode Island and Virginia.

For the above reasons, as applied to a minor plaintiff in a lead paint action against HABC, the LGTCA notice requirement does not violate Article 19 of the Maryland Declaration of Rights.

**IN CASE NO. 16, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANT TO PAY COSTS.**

**IN CASE NO. 17, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANT TO PAY COSTS.**

BATTAGLIA and ADKINS, JJ., concur in No. 16, Sept. Term, 2013.

BATTAGLIA, J., concurring, in which ADKINS, J., joins.

I concur with the majority's opinion in *Brittany Ellis v. Housing Authority of Baltimore City* that Brittany Ellis (Brittany) failed to prove substantial compliance with the notice requirements of the Local Government Tort Claims Acts (LGTCA) and also failed to prove good cause for not complying with the notice requirements, but I write separately to state that *if* reliance had been proven on a notice provided by the Housing Authority of Baltimore City (the Notice), which was attached as an exhibit to Brittany's Opposition to the Housing Authority of Baltimore City's (HABC) motion for summary judgment, I may have come to a different conclusion.

The Notice was what Brittany's Opposition referenced as "HABC['s] form warning of dangers of lead" signed by Carrie Ellis (Ms. Ellis), Brittany's mother, on April 27, 1993,[1] which

---

1. Only one page of the Notice was attached as an exhibit in Brittany's Opposition filed in the Circuit Court because, according to Brittany's

directs a parent to inform the Housing Authority in the event of chipping, flaking, or peeling paint:

> You should notify the Housing Authority and/or the landlord immediately if the unit in which you live has flaking, chipping or peeling paint, water leaks from faulty plumbing or defective roofs. You should cooperate with the Housing Authority and/or landlord's efforts to repair any deficiencies and keep your unit in good shape. Don't attempt any abatement work yourself. Scraping or sanding can create dust which could result in a greater risk of exposure. The use of heat or paint removers could create a vapor or fume which may cause poisoning if inhaled over a long period of time.
>
> Whenever possible, the removal of lead-based paint should take place when there are no children and pregnant women on the premises.
>
> * * *
>
> Since your child can acquire lead paint from sources other than your home, you should continue to watch out for symptoms of lead poisoning.
>
> *YOUR ATTENTION TO POTENTIAL PROBLEMS CAN MINIMIZE EXPOSURE RISK*
>
> Remember that you as a parent play a major role in the prevention of lead poisoning. Your actions and awareness about the lead problem can make a big difference.

(emphasis in original). In the Circuit Court or this Court, Brittany did not allege that Ms. Ellis detrimentally relied on the Notice by only informing, through Brittany's doctor, the HABC of a potential lead issue, rather than complying with the notice requirements of the LGTCA, and therefore, I agree with the majority's assessment that Brittany did not substantially comply with the notice requirements of Section 5–304 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol., 2008 Supp.).

---

brief filed in this Court, this was the only page found in the tenant file kept by the HABC on Ms. Ellis.

In raising this issue, I am concerned that the Housing Authority provided direction to tenants to respond in a specific manner to chipping, flaking, and peeling paint, omitting any reference to the requirements of the LGTCA. While our jurisprudence has not previously addressed the issue of whether a claimant can substantially comply with the notice requirements of the LGTCA when the local government provides written direction to the claimant to act in a manner different from those requirements, many of our sister courts have opined that the local government is estopped from asserting improper notice of claim as a defense under their respective Tort Claims Acts under similar circumstances. *Cf.*, *e.g.*, *City of Montgomery v. Weldon*, 280 Ala. 463, 195 So.2d 110, 111 (1967) (opining that the city of Montgomery was estopped from asserting improper notice of claim as a defense pursuant to former Title 37, Section 504, Alabama Code 1940 [2] when a city official assured the plaintiff that he had "done all necessary to perfect and complete the claim" and the claimant relied on the official's statement in not further pursuing the claim); *Dambro v. Union County Park Comm'n*, 130 N.J.Super. 450, 327 A.2d 466, 471 (1974) (concluding that a municipal corporation, Watchung, was estopped from asserting improper notice of claim as a defense under the notice provisions of the New Jersey Tort Claims Act, Section 59:8 of the New Jersey Statutes Annotated [1972],[3] when the plaintiff relied on a

---

**2.** Former Section 504, Alabama Code (1940) provided:

No recovery shall be had against any city or town, on a claim for personal injury received, unless a sworn statement be filed with the clerk, by the party injured, or his personal representative, in case of his death, stating substantially the manner in which the injury was received, and the day and time, and the place where the accident occurred, and the damages claimed.

This provision is currently codified at Section 11–47–192, Alabama Code (2013).

**3.** Specifically, the county alleged non-compliance with Section 59:8–4 of the New Jersey Statutes Annotated (1972), which provided:

A claim shall be presented by the claimant or by a person acting on his behalf and shall include:

a. The name and post office address of the claimant;

statement by Watchung's tax assessor that improperly informed the plaintiff which entity was to be served).

Good cause to waive the notice requirements also may have existed. To determine good cause, we consider "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rios v. Montgomery Cnty.*, 386 Md. 104, 141, 872 A.2d 1, 22 (2005) (citation and quotations omitted). We have previously opined that good cause exists when a government agent makes representations that a claimant reasonably relies on in not complying with the notice requirements and the local government is otherwise appraised with "sufficient information to permit it to make an investigation in due time sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *See Moore v. Norouzi*, 371 Md. 154, 179–80, 807 A.2d 632, 647 (2002), quoting *Grubbs v. Prince George's County*, 267 Md. 318, 321, 297 A.2d 754, 756 (1972) (opining that good cause existed to excuse two claimants' failure to comply with the notice requirements when the claimants notified the county's independent contractor of their claims, which held itself out as the "claims administrator" and communicated with the parties regarding their claims). Similar to *Moore*, an ordinarily prudent person, relying on the representation made in the Notice provided by the HABC that a tenant should "inform the Housing Authority" of lead paint issues could reasonably determine that the only measure necessary to protect her

---

b. The post-office address to which the person presenting the claim desires notices to be sent;

c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

rights after observing a potential lead hazard in her home is to so inform the HABC.

The absence of proof of reliance, however, leads me to concur in the opinion in Brittany's case.

Judge ADKINS has authorized me to state that she joins this concurring opinion.