REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0333

September Term, 2013

THE MAYOR AND CITY COUNCIL OF
BALTIMORE

v.

AGNES STOKES, ET AL.

Graeff,
Hotten,
Moylan, Charles E. Jr.
        (Retired, Specially Assigned),

JJ.[*]

Opinion by Hotten, J.

Filed: June 25, 2014

[*] Judge Kevin F. Arthur did not participate in
the Court's decision to designate this opinion
for publication in the Maryland Appellate
Reports pursuant to Maryland Rule 8-605.1

This appeal and cross-appeal stem from a Baltimore City automobile accident. Driver, appellee/cross-appellant, Agnes Stokes, and her passenger, appellee/cross-appellant, Bertha Stokes, brought a negligence action against the driver of the other vehicle, cross-appellee, Doreatha Maynor. Ms. Maynor filed a third-party complaint against appellant, the Mayor and the City Council of Baltimore. The City moved for summary judgment, or in the alternative, a dismissal of the claims by Ms. A. Stokes and Ms. B. Stokes (collectively "Stokes appellees") for failure to comply with the notice provisions of the Local Government Tort Claims Act. The trial court denied both motions and at the conclusion of the evidence, granted motions for judgment as to Ms. A. Stokes and Ms. Maynor. The jury returned a verdict against the City. The City noted an appeal against Ms. A. Stokes and Ms. B. Stokes, and presents the following three questions for our review[1]:

> 1. Did the lower court err in finding that Bertha Stokes and Agnes Stokes had substantially complied with the LGTCA's notice requirement for their personal injury claims by relying on the notice of property damage claim filed by another party to satisfy a condition precedent?
>
> 2. Did the lower court err in finding that Bertha Stokes had good cause for failing to comply with the notice requirement of the LGTCA when she failed to present evidence of good cause and did not file a request for judicial waiver of the notice requirement?
>
> 3. Did the lower court err in considering the issue of whether the City was prejudiced by the lack of LGTCA notice before Agnes Stokes presented evidence of good cause for her failure to comply with the notice requirement?

Ms. A. Stokes filed a cross-appeal, presenting the following question:

---

[1] The City noted its appeal only as to the Stokes appellees. However, Ms. Maynor submitted a brief responding to the City's appeal. The City filed a motion to strike Ms. Maynor's brief and this Court granted that motion prior to oral arguments.

1. Did the trial court err in directing a verdict in favor of [c]ross-[a]ppellee, Doreatha Maynor, when there was credible evidence presented of her negligence?

Also on cross appeal, Ms. B. Stokes presents the following question:

1. Did the trial court err in directing verdicts in favor of [c]ross-[a]ppellees, Agnes Stokes and Doreatha Maynor, when there was credible evidence presented of their negligence?

For the reasons that follow, we shall reverse the judgments of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

On November 15, 2009, appellee/cross-appellee, Doreatha Maynor ("Ms. Maynor"), was driving her automobile in the 600 Block of North Mount Street in Baltimore City approaching Edmondson Avenue. At the same time, appellee/cross-appellant, Agnes Stokes ("Ms. A. Stokes"), was driving down Edmondson Avenue with a passenger, Bertha Stokes ("Ms. B. Stokes"). Ms. Maynor entered the intersection without stopping and struck Ms. A. Stokes' vehicle, allegedly due to the fact that the stop sign at the intersection of North Mount Street and Edmondson Avenue was on the ground and not in the proper standing position. Police responded to the scene and took a police report, which noted that the stop sign that is normally at the intersection was on the ground instead of standing upright in its correct position.

On December 11, 2009, Ms. Maynor's insurance company, State Farm, sent a letter to the City Solicitor, informing the City of a potential claim Ms. Maynor had for property damages to her vehicle. This letter was sent pursuant to the Local Government Tort Claims Act ("LGTCA"), Maryland Code, (2006, Repl. Vol. 2013), Courts & Judicial Proceedings

Article [hereinafter Cts. & Jud. Proc.] §5-304(b)-(c)(3)(i),[2] which requires that a claimant file notice within 180 days of the date of the alleged tort. On February 24, 2012, Ms. A. Stokes filed a lawsuit in trial court against Ms. Maynor for injuries resulting from the automobile accident. Ms. Maynor filed a third-party complaint against the City, alleging negligence. According to Ms. Maynor, the stop sign was on the ground as a result of a prior automobile accident that the City was aware of, yet it had not repaired the sign. Ms. B. Stokes filed a complaint against Ms. A. Stokes, Ms. Maynor and the City.

In May 2012, the City moved for summary judgment or, in the alternative, to dismiss, arguing that neither Ms. Maynor, nor Ms. B. Stokes properly complied with LGTCA's notice requirement. Judge Nance denied the motion, finding that Ms. Maynor's letter from State Farm satisfied the notice requirement for both her and Ms. B. Stokes because the letter was sufficient to inform the City of their claims. He also found that, in the alternative, Ms. B. Stokes had good cause for not strictly complying. Following this hearing, Ms. A. Stokes amended her complaint to include claims against the City. The City then moved for summary judgment, or in the alternative, to dismiss Ms. A. Stokes' claims, asserting that she had failed to comply with the LGTCA's notice requirement. Arguments were held before Judge Murdock, who denied the motion, finding that Ms. Maynor's timely letter was sufficient to

---

[2] (b) *Notice Required.* – (1) Except as provided in subsections (a) and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

put the City on notice and that Ms. A. Stokes had therefore substantially complied with the notice requirement.

The case proceeded to trial on March 28, 2013. At the conclusion of the evidence, Ms. Maynor and Ms. A. Stokes moved for judgment. The trial court granted the motions. Accordingly, the jury only decided whether the City was liable for the injuries suffered by the parties. The jury returned a verdict against the City. The City noted a timely appeal against Ms. A. Stokes and Ms. B. Stokes, challenging the motions courts' findings[3] that they had substantially complied with the LGTCA's notice requirement. Ms. A. Stokes noted a cross- appeal against Ms. Maynor, challenging the trial court's grant of Ms. Maynor's motion for judgment. Ms. B. Stokes also noted a cross-appeal, against Ms. Maynor and Ms. A. Stokes, challenging the trial court's grant of their respective motions for judgment.

Additional facts shall be provided *infra*, to the extent they prove relevant in addressing the issues presented.

## STANDARD OF REVIEW

We review a trial court's finding that there was substantial compliance with the LGTCA's notice requirement or good cause for failing to comply with the notice requirement under an abuse of discretion standard. *See Moore v. Norouzi,* 371 Md. 154, 168 (2002). "An abuse of discretion exists when no reasonable person would take the view adopted by the [trial] court [ ]. . . or when the court acts without reference to any guiding rules or

---

[3] The City is appealing both Judge Nance's and Judge Murdock's grants of summary judgment.

- 4 -

principles. An abuse of discretion may also be found where the ruling under consideration is clearly against the logic and effect of facts and inferences before the court[ ]. . . or when the ruling is violative of fact and logic." *Mitchell v. Hous. Auth. of Baltimore City*, 200 Md. App. 176, 205 (2011) (citing *Wilson v. John Crane, Inc.*, 385 Md. 185, 198 (2005)) (internal quotations omitted).

**I. APPEAL**

**DISCUSSION**

On appeal, the City contends that appellee's claims are barred due to their failure to comply with the LGTCA's notice requirement. It advances three arguments in support. First, that the court erred in finding that both parties had substantially complied with the notice requirement. Second, that the court erred in finding that they had good cause for failing to comply. Third, that the court erred in considering whether the City was prejudiced by the lack of notice before appellees had presented evidence of their good cause failure.

**1. Was there substantial compliance with the LGTCA's notice requirement?**

The City argues the motions courts erred in denying its motions for summary judgment against the Stokes appellees because they did not substantially comply with the notice requirement. The automobile accident occurred on November 15, 2009. On December 11, 2009, Ms. Maynor's insurance company filed a Statement of Claim as to property damage with the City. Neither Ms. A. Stokes nor Ms. B. Stokes filed a similar claim. Prior to trial, the City filed two separate motions for summary judgment or, in the

alternative, motions to dismiss, against Ms. A. Stokes and Ms. B. Stokes respectively, asserting that their claims were barred for failure to comply with the statutory notice requirement. Each motion was heard before a different judge, yet both motions were denied after the respective judges found that both parties had substantially complied with the notice requirement, by virtue of the State Farm Statement of Claim.

The LGTCA was enacted to provide a remedy for members of the public who are injured by tortious acts of employees of local governments. *See Ashton v. Brown*, 339 Md. 70, 107-08 (1995). It requires that local governments in Maryland defend lawsuits resulting from torts committed by its officers and employees within the scope of employment. Cts. & Jud. Proc. §5-302(a). In order to maintain a civil action against a local government or its employees, an injured party must provide notice to the designated government official within 180 days of the injury. *See Rios v. Montgomery County*, 157 Md. App. 462, 480 (2004) ("Serving timely notice is essential to preserve a claimant's right to file suit at any time during the limitations period."); *see also* §5-304(b)(1). Courts and Judicial Proceedings §5-304(b)-(c)(3)(i), the LGTCA's notice requirement, provides:

> (b) *Notice Required.* – (1) Except as provided in subsections (a) and (d) of this section, an action for unliquidated damages may not be brought against a local government or its employees **unless the notice of the claim required by this section is given within 180 days after the injury**.
>
> (2) The notice shall be in writing and shall state the time, place, and cause of the injury.
>
> (c)(1) The notice required under this section shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United

States Postal Service, by the claimant or the representative of the claimant.

(2) Except as otherwise provided, if the defendant local government is a county, the notice required under this section shall be given to the county commissioners or county council of the defendant local government.

(3) If the defendant local government is:

(i) Baltimore City, the notice shall be given to the City Solicitor; . . . .

(emphasis added).

Recently, the Court of Appeals addressed whether a plaintiff had substantially complied with the notice requirement in *Housing Authority of Baltimore City v. Woodland*, 2014 WL 1227566 (2014). There, the plaintiff was a young child when she, her mother and her grandmother moved into a housing unit owned by the defendant. *Id.* at *1. Ten years after they moved in, the plaintiff's blood was tested and revealed elevated lead levels. *Id.* Immediately after receiving the results, the plaintiff's mother met with the defendant to discuss the test results. *Id.* The defendant tested the unit for lead, and after the tests came back positive, relocated the plaintiff and her relatives to a different housing unit. Twelve years later, the plaintiff brought suit alleging injuries from lead exposure. She also asserted that she had complied with the notice requirement and in the alterative, that she had good cause for failing to substantially comply. *Id.* The defendant moved for summary judgment, arguing that she had failed to comply and lacked good cause for the failure. *Id.* The court denied the motion, finding that there was a genuine dispute of material fact. Upon the conclusion of the evidence, the defendant moved for judgment again arguing failure to

comply with the notice requirement. The court denied the motion, finding that the plaintiff had substantially complied and that even if she hadn't, she had good cause for not doing so. *Id.* The defendant appealed and the Court of Appeals granted *certiorari* on its own initiative. *Id.* at *2.

The Court explained that even where a plaintiff fails to strictly comply with the notice requirement, if they can demonstrate substantial compliance, they may proceed with their lawsuit. *Id.* at *4. A plaintiff substantially complies when:

> (1) [T]he plaintiff makes "some effort to provide the requisite notice"; (2) the plaintiff does "in fact" give some kind of notice; (3) the notice "provides . . . requisite and timely notice of facts and circumstances giving rise to the claim"; and (4) the notice fulfills the LGTCA notice requirement's purpose, which is
>
> > to apprise [the] local government of its possible liability at a time when [the local government] could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and [the local government's] responsibility[.]

*Id.* (quoting *Ellis v. Hous. Auth. of Baltimore City*, 436 Md. 331, 341 (2013)). The Court then cited several cases where it had found substantial compliance when a plaintiff had sent in a letter or some other form of communication, but the notice failed to meet the statutory requirements. *Id.* Because the plaintiff was a child when they lived at the defendant's property, the Court considered her mother's actions. Upon receiving the elevated blood lead test results, the mother immediately contacted the defendant regarding them. However, it did not appear that the mother informed the defendant that she intended to sue. After noting that

the plaintiff's mother did not make any kind of written or oral threat of a lawsuit to the defendant, the Court held that she had not substantially complied with the notice requirement. *Id.* at \*5.

In *Halloran v. Montgomery County Dept. of Public Works*, 185 Md. App. 171 (2009) the plaintiff tripped over irregular pavement in a crosswalk. *Id.* at 178. Within days, she wrote a letter to the defendant, informing it that she had tripped over an area "that appeared to have been dug up previously and quickly 'repaired.'" *Id.* She stated that she had injured herself, attached pictures of her injury, and requested that the city attend to the area before another pedestrian was also injured. *Id.* The defendant responded, explaining that it was forwarding her letter to the highway administration maintenance office. *Id.* at 179. Three days after her letter to defendant, the plaintiff filed a notice of claim form with the state of Maryland, requesting that her medical bills be paid in full. *Id.* The State responded that it had investigated her claim, found that it was not at fault and referred her to Washington Gas, who it believed was at fault. *Id.* Nine months after the accident, the plaintiff sent a letter to the county executive, explaining the facts of her injury and inquiring as to whether the County was responsible. *Id.* The County subsequently denied liability at which point the plaintiff filed a lawsuit two years after the accident. *Id.* at 180. The County filed a motion to dismiss or, in the alternative, a motion for summary judgment on the grounds that the plaintiff had failed to comply with the LGTCA's notice requirement. The trial court granted the motion for summary judgment and the plaintiff appealed. *Id.*

Before this Court, the plaintiff asserted that she had substantially complied with the notice requirement. We noted that substantial compliance "requires some effort" to provide notice that the plaintiff is pursuing a claim. *Id*. at 183. Using *Wilbon v. Hunsicker*, 172 Md. App. 181, 191 (2006), as illustration, we observed that substantial compliance must both inform the proper authorities of a claim for damages or an intent to file suit *and* it must give the officials time to conduct an investigation specific to the claims that are or will be asserted. Referring specifically to claims for damages in tort cases:

> [A]n investigation into a tort claim for damages involves different issues, including, among other things, legal defenses, the nature and extent of the actual injuries sustained, the causal relationship of the injures to the alleged misconduct, the likelihood of an award of compensatory and/or punitive damages, the necessity and cost of expert testimony, and litigation strategy.

*Id.* at 186-87. We concluded that the letter the plaintiff had sent to the defendant days after the accident did not constitute notice because it did not state a potential claim. *Id.* at 187. Additionally, it did not "apprise [the County] of its possible liability at a time when it could conduct its own investigation." *Id.* at 188. Accordingly, the plaintiff did not substantially comply with the notice requirement and the court did not err in granting the motion for summary judgment. *Id.*

Maryland courts have not decided whether a party may rely upon a third-party's notice as a means of complying with the LGTCA's notice requirement. However, the U.S. District Court for Maryland has answered this question in the negative. *See Quigley v. U.S.*, 865 F. Supp. 2d 685 (2012). In *Quigley*, there were six individuals involved in an automobile

- 10 -

accident that occurred due to the alleged negligence of the Washington Suburban Sanitary Commission ("WSSC"). The plaintiffs brought three separate lawsuits asserting claims of negligence and strict liability against WSSC and the County. *Id.* at 689. The U.S. District Court consolidated all the cases. Five of the plaintiffs had provided the County with timely notice of their claims. The sixth plaintiff, Ms. Barbosa, did not. *Id.* at 691. As a result, the County filed a motion to dismiss Ms. Barbosa's claims on the grounds that she failed to comply with the notice requirements. In response, Ms. Barbosa claimed that she had substantially complied because her co-plaintiffs had provided notice to the County and included the police reports which included her name. *Id.* at fn.1. The U.S. District Court rejected this argument. It explained that "it does not appear that any Maryland court has yet relaxed the basic requirement that notice be delivered 'by the claimant or the representative of the claimant' or that the notice specifically refer to the claim of the [p]laintiff." *Id.* at 692. The court continued, noting that Ms. Barbosa did have not any legal relationship with the other plaintiffs that could overcome the fact that she or an agent of hers must provide notice. *Id.* It concluded that "Ms. Barbosa's attempt to piggyback on the timely efforts of others is insufficient to find compliance, substantial or otherwise, with the LGTCA." *Id.*

Both Indiana courts and New Jersey courts have reached a similar conclusion regarding reliance upon the compliance of another party to satisfy the notice requirement. In *Rosga v. City of Hammond*, 493 N.E.2d 787, 788 (1985 Ind. CT. App.) the plaintiff's husband, along with three other individuals, were killed in an automobile accident. An

- 11 -

attorney representing the three other deceased individuals filed a notice of claim with the City, but the plaintiff did not. The other parties' notice referenced the plaintiff by name but did not assert a claim on her behalf. *Id.* The trial court dismissed the plaintiff's complaint for failure to comply with the notice requirement. The appeals court affirmed the trial court's dismissal, reasoning that it found no reason to permit "a party to rely upon the notice of claim given by some other party for that party's claim arising out of the same occurrence." *Id.* at 789. The court concluded that the plaintiff had neither given notice, nor authorized a representative to provide notice and therefore, could not maintain her claim in court. *Id.* Likewise, in *Madej v. Doe*, 194 N.J.Super. 580 (1984), a woman slipped and fell on a sidewalk and filed a notice of claim with the City of Newark. She and her husband later sued the City for damages. *Id.* at 582. The City moved to dismiss the husband's claims, arguing that he failed to comply with the jurisdiction's tort claims act notice requirement. *Id.* at 583. It argued that the husband had not filed a notice of claim with the City and that it had no notice that he was alleging damages until he filed the lawsuit. *Id.* The husband argued that the wife's claim put the City on notice and satisfied the notice requirement. *Id.* at 584. The court disagreed, reasoning that the City had never received any information regarding the husband's specific claim or allegations of injury. *Id.*

In the instant case, Ms. Maynor provided timely notice to the City of her claim through a letter from her insurance company on December 11, 2009 within one month of the car accident. Neither Ms. A. Stokes nor Ms. B. Stokes attempted to provide notice within

the 180 day time period. During the summary judgment hearings and reflected in their briefs, Ms. A. Stokes and Ms. B. Stokes contend that the City had notice of their claims from the State Farm letter that outlined the accident between Ms. Maynor and Ms. A. Stokes. In the letter, State Farm indicated that Ms. Maynor had been involved in an accident with Ms. A. Stokes and it (State Farm) presented the City with a claim for property damages to Ms. Maynor's vehicle. The letter also stated that State Farm was exercising its subrogation rights. Appellees assert that this case is distinguishable from *Quigley* because, unlike the plaintiffs there, they had a relationship with Ms. Maynor, because State Farm, her insured, had subrogation rights, which created a legal relationship between them. We are not persuaded. State Farm sent the letter as a result of its contractual relationship with Ms. Maynor, and thus, even if its notice on *her* behalf was sufficient, Ms. A. Stokes and Ms. B. Stokes had no legal relationship with State Farm such that it could provide notice on their behalf.

Appellees also argue that because Ms. Maynor's State Farm letter references the police report, which identified them both, that the City had notice of their possible claim. The plaintiff in *Quigley* unsuccessfully advanced the same argument. The U.S. District Court dismissed that claim, reasoning that regardless of the fact that she was mentioned, notice requires that the claimant make some effort to provide notice. It is clear that neither of the appellees made an effort to notify the City of their claim. The earliest point which Ms. B. Stokes attempted to give notice was not until March of 2012 – more than two years after the accident. As illustrated in *Woodland* and *Halloran*, substantial compliance requires

some act on the part of the claimant. Here, the Stokes appellees exerted no effort to attempt to strictly comply with the notice provision. Therefore, they cannot maintain that they substantially complied. Accordingly, we conclude that the court erred in finding that the Stokes appellees had substantially complied with the notice requirement.

## 2. Was there good cause for the failure to comply with the LGTCA's notice requirement?

Although the Stokes appellees did not comply with the notice requirement, Cts. & Jud. Proc. §5-304 provides that a court may waive the notice requirement if a party demonstrates good cause for failure to comply.

> (d) *Waiver of notice requirement.* – Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

"The test for whether good cause exists pursuant to section 5-304(c) is 'whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rios v. Montgomery Cnty*, 386 Md. 104, 141 (2005). We have enumerated the factors that courts may consider in deciding whether a plaintiff acted as a reasonable person in the same or similar circumstances, which are:

> [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, . . . [4] ignorance of the statutory notice requirement [,] or (5) misleading representations made by representative of the

local government.

*Wilbon v. Hunsicker*, 172 Md. App. 181, 205-06 (2006).  A trial court must examine these factors before making a determination that there was good cause.  *See Halloran*, 185 Md. App. at 193.

In *Quigley*, 865 F.Supp.2d, after finding that Ms. Barbosa could not rely on the notice of her co-plaintiffs to satisfy the notice requirement, the court turned to the above referenced factors to ascertain whether there was good cause for her notice failure.  *Id.* at 692.  Ms. Barbosa argued that based on the first factor, her failure was excusable neglect.  *Id.* at 693. She submitted an affidavit that she did not receive the police report until nine months after the accident and was therefore, unaware of the County's potential negligence until then.  *Id.* The U.S. District Court did not agree with these arguments.  It found that there were "far too many gaps" for good cause to be found.  *Id.*  It then discussed several questions that were not answered by Ms. Barbosa, including an explanation of why her prior counsel, who could have filed a timely notice, did not do so, and why the co-plaintiffs were able to provide timely notice with the same information available, yet she was not.  *Id.*  Reasoning that Ms. Barbosa did not meet her burden of demonstrating good cause, the Court concluded that her claims must be dismissed for failure to comply with the notice requirement.  *Id.* at 694.

As stated previously, we review a trial court's determination of good cause under an abuse of discretion standard.  *See Wilbon*, 172 Md. App. at 205.  The motions court that considered the City's motion for summary judgment against Ms. B. Stokes determined that

- 15 -

there was good cause "based on the facts existing in this case." The motions court which heard the same motion against Ms. A. Stokes did not make a specific ruling as to good cause. Appellees did not proffer any evidence that their failure to provide notice was for good cause.

Appellees did not explain to the motions court why their failure to provide notice was excused. The case law makes it clear that the party asserting good cause has the burden of proving it. Unlike in *Quigley*, appellees did not file an affidavit with the court supporting good cause. Additionally, they presented no argument before this Court in support of good cause other than that the trial court found that good cause existed. Ms. Maynor had enough information to learn that she needed to file a claim with the City. Appellees do not explain what precluded them from making the same determination. With no evidence in support of the claim, a finding of good cause was made on untenable grounds. Accordingly, we find that the trial court abused its discretion in finding that there was good cause.

## 3. Was consideration of prejudice to the City improper before appellees presented evidence of good cause?

Finally, the City contends that the motions courts erred in questioning the City regarding prejudice before they required appellees to demonstrated good cause.

In *Prince George's Cnty., v. Longtin*, 419 Md. 450, 467 (2011), the Court of Appeals explained that "the burden is on the claimant first to show 'good cause.' Then if the local government cannot 'affirmatively show that its defense has been prejudiced by the lack of required notice', the court may hear the case despite the faulty notice." Likewise, we stated in *Halloran*:

[I]t was *not* the County's burden to claim "that any alleged deficiency in notice had an impact . . . on [the County's] ability to conduct a thorough investigation." Such inquiry only arises, as discussed *infra*, when a claimant has shown good cause to waive the notice provision, and the burden, by statute, shifts to the local government to show that its defense has been prejudiced. *See* §5-304(d).

*Halloran*, 185 Md. App. at 189. The following colloquy occurred during the City's motion for summary judgment against Ms. B. Stokes.

[THE CITY]: The fact that we denied liability doesn't mean that we still shouldn't be allowed notice to investigate the injuries as part of the subsequent lawsuit. The fact that we denied a claim doesn't waive our rights to know what injury is –

THE COURT: Well, what prejudice do you have when you've said I've done all my investigations?

[THE CITY]: Your Honor, the prejudice analysis only comes into play, according to the [*Rios]* case, if plaintiffs can show good cause to why they didn't provide actual or substantial notice.

It's a two-pronged analysis. They have the burden of showing that they had good cause for not providing actual or substantive notice within the required period time under the Local Government Tort Claims Act.

\* \* \*

THE COURT: And the Court's question still is, what prejudice is there to it?

[THE CITY]: Your Honor, aside from the fact that the plaintiffs did not show good cause, which triggers the prejudice analysis –

THE COURT: I'm sorry. My question is, what prejudice do you contend exists?

Similarly, at the City's motion for summary judgment against Ms. A. Stokes, she argued that

the City had shown no prejudice and the following occurred:

- 17 -

THE COURT: So your argument then, if I understand you correctly, is that you're saying, Judge, we were technically in violation of the Local Government Tort Claims Act. But since there's no prejudice to the City with regard to this accident, you should use your discretion and overlook that?

[A. STOKES]: Correct in part. And the technical aspect of violation is no notice of the damages. Because the State – or the City clearly does have notice of the occurrence. So yes, that is our position.

THE COURT: Okay. Ms. Gross, you get the last word.

[THE CITY]: Thank you Your Honor. With respect to the requirement there be, it's not just the lack of prejudice, there also has to be a finding of good cause.

THE COURT: Well, tell me what the prejudice to the City is.

\* \* \*

[THE CITY]: But it's not just a finding of a lack of prejudice, there also has to be an affirmative showing of good cause on behalf of the plaintiff for not following the – for not following the notice of statute.

The *[Rios]* case, *[Rios v. Montgomery County]*, 157 Md. App. 462 states that Maryland Courts evaluate good cause based on whether the claimant prosecuted his claim with reasonable degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.

There's been no proffer of good cause on behalf of the plaintiff for not filing timely notice. As we stated in the [m]otion for [s]ummary [j]udgment. and in the exhibit attachments, the lack of the stop sign was noted in the police report that was filed that day. There's no reason for them not to have been aware of the City's involvement and served notice in a timely fashion.

If Your Honor is going to conduct the good cause/lack of prejudice analysis, there has to be some showing of good cause from the plaintiff as to why they didn't deliver the notice . . . .

The City was correct that the good cause/prejudice analysis is two pronged. This Court has

- 18 -

acknowledged that a plaintiff must first demonstrate good cause before a circuit court considers whether the government suffered prejudice from the failure to provide timely notice. As such, both trial judges erred in requiring the City to establish prejudice when the appellees had not met their burden of establishing good cause.

We conclude that the trial court erred on three occasions: 1) when it found that appellees had substantially complied with the notice requirement; 2) when it performed the prejudice analysis without appellee first establishing good cause; and 3) when it found appellee had good cause for not complying with the notice requirement when there were no facts to support such a finding.

## II. APPELLEES' CROSS-APPEAL

Both appellees noted a cross-appeal. Ms. A. Stokes appealed against Ms. Maynor alleging that the trial court erred in granting Ms. Maynor a directed verdict because a jury could have determined she was negligent. Ms. B. Stokes appealed against Ms. A. Stokes and Ms. Maynor, alleging the same. Since the claims of both cross-appeals are the same, we shall address them together.

### STANDARD OF REVIEW

On review of a motion for judgement, "[w]e assume the truth of all credible evidence on the issue, and all fairly deducible inferences therefrom, in the light most favorable to the party against whom the motion is made. Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted

to the jury for its consideration." *Orwick v. Moldawer*, 150 Md. App. 528, 531-32 (2003) (citations omitted).

## DISCUSSION

At the conclusion of the evidence, Ms. A. Stokes advanced two motions. One was a motion to have Edmondson Avenue declared a through highway, thereby triggering the Boulevard Rule. The other was a motion for judgment. Ms. Maynor also moved for judgment, but opposed the motion to designate Edmondson Avenue a through highway. All three motions were argued at the same time, and the record does not reflect which motion was argued at what time. The motion pertaining to the Boulevard Rule was the basis of Ms. A. Stokes' motion for judgment. She argued that the court should have declared Edmondson a through highway so that the Boulevard Rule would apply, and therefore, as a matter of law, absolving her of negligence. Although the court granted both motions for judgment, it is unclear from the record what its ruling was on the Boulevard Rule motion. Although that motion was not appealed by either party, it was a basis of at least Ms. A. Stokes' motion for judgment and was discussed in both cross-appellants' briefs. Accordingly, we shall address the arguments in relation to the grant of the motion for judgment.

During arguments, Ms. A. Stokes argued that Edmondson Avenue was a boulevard because it was a roadway and there were stop signs that controlled cross traffic. Therefore, Ms. A. Stokes was a favored driver and did not have a duty to check for oncoming traffic. Ms. Maynor, argued that the absence of a stop sign on Mount Street, did not trigger the

Boulevard Rule. Therefore, Ms. A. Stokes was not a favored driver. Ms. B. Stokes

concurred with Ms. A. Stokes and argued that Ms. Maynor's negligence claim should go to

the jury. During oral arguments, the trial court asked for authority to support the contention

that the Boulevard Rule applies even if the stop sign was not in the correct position. The

only cases offered were *Houlihan v. McCall*, 197 Md. 130 (1951), and *Hickory Transfer Co.*

*v. Nezbed*, 202 Md. 253 (1953).

> After a brief recess, the following ensued:

> THE COURT: . . . So I'm going to – honestly I think this is actually a fairly complicated issue. And I did look at the further [*Houlihan]* and then *[Hickory Transfer]*, which is sort of on point but not quite on point . . . . I will tell you, I mean the [c]ourt's inclination, the inclination that I have, and I haven't made a final ruling, but the inclination is to find – I mean first there's a declaration that this is a boulevard . . . . I mean the definition of the boulevard is defined by what is a through highway, which clearly calls for the placement of stop signs and yield signs, which clearly were not here certainly in the direction that Ms. Maynor was coming. I'm sympathetic again to the argument of Ms. Stokes, but I don't know how even looking, you know, but the fact that at one point in time a intersection is governed by the Boulevard Rule and then regardless of what the situation is that the signs are gone that it's always going to be governed by the Boulevard Rule. I don't think *[Houlihan]*, though certainly made inquiries as to historically had there been a stop sign it certainly wasn't – ultimately they found that it hadn't been a stop sign so it's governed by – not governed by the Boulevard Rule. But I don't think it clearly made it – gave as much guidance as to whether or not it would be governed by the Boulevard Rule had there been historically shown that it was a stop sign. And I don't find any sort of subsequent case law. And that all being said, again furthering my inclination that would lead me to as far as Ms. Maynor to find that this at best would have to be an uncontrolled intersection in which case she would have the right of way. I don't seen [sic] any inference that in a sense that she shouldn't have yielded. It seems the cars hit this intersection exactly the same time or pretty much to.
> * * *
> So my inclination then also to find as was declared in [*Hickory Transfer]* that

Ms. Agnes Stokes and how they sort of viewed and I think characterized the driver who had the green light in [*Hickory Transfer*] as innocent, innocently thought self-entitled the right of way, I believe based on the facts, the only facts that I've heard and any inference from them that she innocently believed that she had the right of way as well based on historically the way it had been. But I will say for the record, I find, you know, contrary to I think some of the arguments of counsel, I find this a much closer situation than with Ms. Maynor just because unlike unfortunately in the *[Hickory Transfer]* . . . . Again, my inclination and I'm going to look further in my final ruling, but my inclination is I just can't find that it would be reasonable that everyone driving down Edmondson Avenue would slow down at every corner to see, whoa, gee I've got to check both sides. There's stop signs. And then proceed through. I don't think that's the reason we have these traffic laws or why we have the Boulevard Rule.

The Boulevard rule requires:

[A] driver upon approaching a through highway from an unfavored road must stop and yield the right of way to all traffic already in or which may enter the intersection during the entire time the unfavored driver encroaches upon the right of way; [and] this duty continues as long as he is in the intersection and until he becomes a part of the flow of favored travelers or successfully traverses the boulevard.

*Grady v. Brown*, 408 Md. 182, 194 (2009) (quoting *Creaser v. Owens*, 267 Md. 238, 239-40 (1972)) (internal quotations omitted). This rule is codified in the Maryland Code as §§21-403(b) & 21-404 of the Transportation Article. In order for the Boulevard Rule to apply, the road must be a "through highway," which the Maryland Code defines as:

(x) "Through highway" means a highway or part of a highway:

(1) On which vehicular traffic is given the right-of-way; and

(2) At the entrances to which vehicular traffic from intersecting highways is required by law to yield the right-of-way to vehicles on that highway or part of a highway, in obedience to either a stop sign or yield sign placed as provided in the Maryland Vehicle Law.

- 22 -

Transportation Article §21-101(x). In response to both Stokes cross-appellants' arguments that the Boulevard Rule applied, Ms. Maynor contended that because the stop sign was not in its proper location – standing upright and visible – Edmondson Avenue could not be a through highway, so the Boulevard Rule was not triggered.

The Court of Appeals addressed a similar issue in *Houlihan v. McCall*, *supra*. There, the plaintiff came to an intersection, looked to her right, saw no cars approaching, then looked to her left before crossing the intersection without checking her right again. 197 Md. at 133. The defendant's truck approached from the right and the two cars collided in the intersection. *Id.* It was undisputed at trial that there was no stop sign at the intersection and that there had never been a stop sign located there. *Id.* at 136. The defendant filed a demurrer[4] alleging that there was no evidence to support a claim that he was negligent because he was on a through highway and had the right of way. *Id.* at 135. The trial court denied the demurrer, reasoning that there was no stop sign in the plaintiff's direction and therefore, neither road could be considered the favored road. *Id.* On appeal, the Court of Appeals noted that "it is clear that the erection of signs by the proper authorities is a necessary prerequisite to the creation of a through highway or stop intersection." *Id.* The Court stated that the outcome of the case was predicated upon whether the road was a

---

[4] A demurrer is: "A pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer." BLACK'S LAW DICTIONARY (9th ed. 2009). The demurrer was abolished in Maryland effective July 1, 1984 following the revision of Md. Rule. 2-302. *Ungar v. State*, 63 Md. App. 472, 478 (1985).

through highway or not. *Id.* at 137. The Court found that as a result of the lack of a stop sign, the Boulevard Rule did apply to the circumstances.

Soon after the *Houlihan* decision, the Court had another opportunity to address a similar issue in *Hickory Transfer Co. v. Nezbed*, 202 Md. 253 (1953). In that case, the plaintiff approached an intersection with a green traffic signal and proceeded through it. *Id.* at 256. At the same time, the defendant approached the intersection, where he observed no stop light and continued through without stopping. *Id.* Unbeknownst to either party, the traffic light which controlled the defendant's lane had malfunctioned; if it had been functioning it would have displayed a red signal. The vehicles collided and the plaintiff sued. *Id.* at 257. The jury returned a verdict against the defendant and he appealed, challenging that there was not sufficient evidence to find him negligent because he was on a boulevard as defined by the Boulevard Rule. *Id.*

On appeal, the Court of Appeals reversed the judgment, reasoning that the defendant "innocently thought himself entitled to the right of way, and in this he was misled by the appearances created by the defective signal device." *Id.* at 261. The Court concluded that there was no negligence on his part because he was entitled to assume he had the right of way based on the fact he was traveling on a boulevard. *Id.* "He [was] not required ordinarily to anticipate that a vehicle will cross in the path of oncoming traffic on the boulevard. Nor is it evidence of negligence that he failed to observe an unlighted signal . . . ." Id.

Since the *Houlihan* and *Hickory Transfer* opinions, there have been no other rulings

regarding whether the absence of a traffic control device renders the Boulevard Rule inapplicable. We believe that Ms. A. Stokes or Ms. Maynor's negligence does not depend upon whether Edmondson Avenue was a boulevard and thus will not decide that issue.

We find this Court's opinion in *Miller v. Montgomery County*, 64 Md. App. 202 (1985), instructive, as the facts are similar to the case at bar. Miller was a passenger in a car driven by Neel. Neel stopped at a red light and proceeded into the intersection when the signal turned green. *Id.* at 206. At the same time, a vehicle driven by Leslie approached the intersection and upon observing no traffic signal, proceeded through it. Leslie testified that it was his first time driving in that area and was unaware that the there was normally a stop light there. *Id.* The two cars collided in the intersection. *Id.* at 207. Miller brought suit against Neel, Leslie, and Montgomery County, because the malfunctioning stop light caused the accident. At the conclusion of trial, all of the parties moved for a directed verdict. *Id.* at 210. The court granted all three. *Id.*

On appeal, Miller argued that there was evidence upon which the jury could have found Neel and Leslie negligent, and therefore, the court erred in granting them directed verdicts. As to Neel, we reasoned that because he had a green traffic signal and had "every reason to believe that the signals controlling" the cross traffic would be red, he had no duty to anticipate others would not obey the traffic signal. *Id.* at 216. As such, this Court found no error in the trial court's grant of the directed verdict.

Leslie relied on *Hickory Transfer*. We explained that the case was distinguishable

- 25 -

from *Hickory Transfer* because the jury could have found that Leslie should have noticed that the traffic light should have been red, because there was a red left turn arrow that he testified to observing before he entered the intersection. *Id.* at 218. After reviewing the circumstances surrounding the particular intersection and Leslie's testimony at trial:

> We believe[d] the determination of whether appellee Leslie could or should have seen that the intersection he was about to enter was controlled by a signal was a question to be decided by a jury. "[A] case should not be withdrawn from the jury, unless, in viewing the evidence and all inferences which may be reasonably drawn therefrom, in a light most favorable to the plaintiff, there is no legally sufficient evidence of negligence for the jury to consider." *Home Insurance Co. v. Metropolitan Fuels Co.*, 252 Md. 407, 411, 250 A.2d 535 (1969). Sufficient evidence was presented from which it could be inferred that Leslie should have proceeded towards the intersection with more care than he did.

*Id.* at 217. Therefore, we found that the court erred in granting Leslie's directed verdict and remanded for a new trial. *Id.*

In the instant case, both parties believed that they had the right of way to proceed without stopping or checking for oncoming traffic. It is well established in Maryland law that along with obeying statutory provisions, all drivers must exercise due care and diligence when driving. *See State, for Use & Benefit of Hopkins v. Marvil Package Co.*, 202 Md. 592, 599-600 (1953) (noting that while there is a presumption that an unfavored driver will stop and yield, this does not relieve other drivers of their duty to exercise care); *see also Grady v. Brown*, 408 Md. 182, 197 (2009) (stating that the Boulevard Rule "must be applied with a modicum of common sense.").

In *Malik v. Tommy's Auto Service Inc.*, 199 Md. App. 610, 613 (2011), the plaintiff

had merged into a turning lane with the intention of making a left turn. While he was at a complete stop and waiting, the defendant's truck began exiting from a parking lot directly across from the plaintiff. *Id.* at 614. The defendant testified that he had waited for oncoming traffic to clear so that he could make a left turn. *Id.* After looking both ways, he proceeded and upon turning, he struck the plaintiff's car. During trial, it was disputed whether the plaintiff began to turn without checking for any other vehicles or if the defendant had turned without observing that the plaintiff was also turning. *Id.* The plaintiff moved for judgment, asserting that the Boulevard rule applied which made him a favored driver and therefore, as a matter of law, gave him the right of way. *Id.* at 615. The trial court denied the motion finding that it was a question of fact for the jury to decide. *Id.* The jury found that the defendant was negligent, but the plaintiff was contributorily negligent and entered a judgment in favor of the defendant. *Id.* at 616.

The plaintiff appealed, arguing that he should have been granted judgment because according to the Boulevard Rule, there was no evidence that could support a claim he was negligent. *Id.* at 618. We affirmed the circuit court's ruling, reasoning that:

> [I]f it can be shown that the favored driver could have avoided the accident if he had been operating lawfully and with due care, then the negligence of the favored driver should be an issue for the jury.

*Id.* at 619 (quoting *Dennard v. Green*, 335 Md. 305, 314 (1994)). We explained that if there is any evidence, even slight evidence, that may tend to prove negligence, a party is not entitled to judgment and the issue must go to the jury. *Id.*

Here, there was evidence that Ms. A. Stokes had driven on Edmondson Avenue and Mount Street hundreds of times and was well aware of the existence of a stop sign on Mount Street and that there was not one Edmondson Avenue. However, considering the standard of care that all drivers owe on the road, and viewing the evidence in the light most favorable to the non-moving party, there was enough evidence for a jury to find that Ms. A. Stokes was negligent in exercising her standard of care. Likewise, there was evidence that Ms. Maynor was negligent. The fact that she was unfamiliar with the intersection, yet failed to slow down and exercise caution could be evidence of negligence. Additionally, at the motions hearings, the City highlighted the fact that Ms. Maynor had testified that upon approaching the intersection, she did not see a stop sign on her side, but did observe one on the opposite side of the street. There was enough evidence to submit the question of both parties' negligence to a jury for consideration.

Finally, we disagree with the trial court's contention that it was unreasonable to expect drivers approaching intersections to slow down and exercise due diligence regarding approaching vehicles. All drivers, regardless of the existence of a traffic controlling device, owe their fellow drivers a reasonable degree of common sense and caution. Accordingly, for the reasons explained above, we conclude that the trial court erred in granting Ms. A. Stokes and Ms. Maynor's motion for judgment and remand back to that court for a new trial.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY ARE REVERSED. COSTS TO BE PAID BY APPELLEES/CROSS-APPELLANTS.**