*In re M.M. & A.M.*, No. 2458, September Term 2024.
Opinion by Zic, J.

**GUARDIANSHIP PROCEEDINGS – TERMINATION OF PARENTAL RIGHTS – UNTIMELY OBJECTION**

Pursuant to Maryland Rule 11-307(b)(2), in determining whether "good cause" exists to accept an untimely objection, a juvenile court may consider, among other circumstances and as appropriate, excusable neglect or mistake, serious physical or mental injury, a parent's location out of state, inability to retain counsel in a complex case, ignorance of the notice requirement, and misleading representations by a government representative.

**THE PUBLIC DEFENDER ACT – GUARDIANSHIP PROCEEDINGS – RIGHT TO COUNSEL**

Section 16-204(b)(1)(vi) of the Criminal Procedure Article of the Maryland Code (2001, 2018 Repl. Vol., 2020 Supp.) entitles parents who have not consented to the termination of their parental rights to counsel during the guardianship proceedings.

**GUARDIANSHIP PROCEEDINGS – TERMINATION OF PARENTAL RIGHTS – MOTIONS**

Pursuant to Maryland Rule 11-104(e), juvenile courts cannot consider facts that are not supported by either the record or an affidavit accompanying a motion.

Circuit Court for Baltimore City
Case No. T24121002
Case No. T24121003

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2458

September Term, 2024

_____

IN RE: M.M. & A.M.

_____

Reed,
Zic,
Albright,

JJ.

_____

Opinion by Zic, J.

_____

Filed: August 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from guardianship proceedings in the Circuit Court for Baltimore City. Father, appellant, is the parent of two minor children, M.M. and A.M. (collectively, "Children"). On May 2, 2024, the Baltimore City Department of Social Services ("Department") filed guardianship petitions for the Children. Father's counsel, C., entered her appearance in the guardianship matter on Father's behalf on July 2, 2024. Father was served with the guardianship petitions and corresponding show cause orders on October 2, 2024. C. filed an untimely objection on January 8, 2025, which the court, sitting as a juvenile court, struck four days later following a hearing.

On February 13, 2025, an Assistant Public Defender with the Maryland Office of the Public Defender ("OPD"), L., entered her appearance on Father's behalf and asked the court to reconsider Father's untimely objection, arguing that C. provided ineffective assistance of counsel. The court declined to consider L.'s motion for reconsideration, found that Father consented to the guardianship proceedings, and terminated Father's parental rights. Father now appeals.

## QUESTIONS PRESENTED

Father presents two questions for our review, which we have rephrased as follows:[1]

---

[1] Father phrased the questions as follows:

1.  Whether the Juvenile Court erred in striking Father's Notice of Objection and denying the Motion to Reconsider Striking of Objection.

2.  Whether failure of Father's Counsel in the Guardianship case to file a timely objection in the Guardianship case

(continued)

1. Whether the juvenile court abused its discretion in striking Father's untimely objection.

2. Whether the juvenile court abused its discretion in denying Father's motion for reconsideration.

For the following reasons, we affirm.

## BACKGROUND

This case concerns siblings M.M. (born in 2023) and A.M. (born in 2021), who have been in the Department's custody for all but a few days of their lives. A.M. was born drug-exposed and removed from his parents' care nine days after his birth due to substance abuse and mental health concerns. M.M. was similarly removed 13 days after his birth. M.M. and A.M. were separately found to be Children in Need of Assistance ("CINA"), and have remained in foster care since their removals. Both reside with long-term adoptive resources.

### The Guardianship Proceedings

On May 3, 2024, the Department filed petitions for the Children, seeking guardianship with the right to consent to adoption.[2] At a scheduling conference on July 2, 2024, Father's CINA attorney, B., informed the circuit court that he would not be representing Father in the guardianship proceedings. At the same hearing, C., a panel attorney assigned by the OPD, entered her appearance on Father's behalf.

and failure to communicate at all with Father deprived Father of his right to counsel in the Guardianship proceeding.

[2] The Children's mother withdrew her objection to the guardianship proceedings and is not involved in the present appeal.

2

On July 15, 2024, the Department served B. with the guardianship petitions. Father, who became incarcerated after the petitions were filed, was personally served on October 2, 2024. The accompanying show cause orders informed Father that he had 30 days to file an objection. The court held a status conference on October 28, 2024, a few days before Father's objection deadline. Father appeared at this status conference in person, and C. appeared virtually but did not file a timely objection on Father's behalf.

Following instruction from the OPD, C. filed an objection on January 8, 2025. The Department moved to strike the objection as untimely, and C. did not respond. At the hearing on the Department's motion to strike, C. offered speculation about why Father had not objected but admitted that she had not consulted with him about his wishes. C. stated that she had never spoken to Father, although she had "tried calling him several, several, several times." She ultimately asked the court "in equity" to permit Father's untimely objection. The court granted the Department's motion to strike, finding no circumstances that could justify the 68-day delay in filing Father's objection.

***Motion For Reconsideration***

In early February 2025, L. entered her appearance on Father's behalf and filed a motion for reconsideration. The motion argued that C. rendered ineffective assistance of counsel by failing to consult with Father about whether to object, failing to file a timely objection, and failing to properly respond to the Department's motion to strike. L. did not file an accompanying affidavit pursuant to Maryland Rule 11-104(e).

At the February 18, 2025 termination of parental rights ("TPR") hearing, the court declined to consider Father's ineffective assistance claim. The court explained that

3

Father's statutory right to counsel under the Public Defender Act[3] had not yet "kicked in" because Father had not filed an objection:

> I think that under the circumstances, it's not clear to me that the statutory right to a Public Defender ever attached in this case because it should have -- what should've happened is after the paperwork, the TPR action was filed by DSS. It was up to [Father] to do one of several different things. One, file an objection. It's spelled out in very simple language [in the show cause orders . . . .]
>
> And two, upon filing an objection, or even frankly without filing an objection, apply for representation through the [OPD], which is also spelled out in the order that is sent to people when a TPR action is filed.
>
> * * *
>
> [T]here's nothing indicating that [Father] ever actually filed the objection or reapplied at the [OPD], and I think one -- at least one of those two things had to happen for his right to representation under the Public Defender Act to kick in[.]
>
> * * *
>
> At some point, enough's enough. At this point, I don't see any indication -- there's nothing in the record from which I can determine that there was even -- that the right to counsel had ever even kicked in yet in the TPR, which would obviate any argument that there is a statutory right to counsel.

With all objections either withdrawn or stricken, the court then granted the Department's guardianship petition and terminated Father's parental rights to the Children. Father timely appealed. We supplement with additional facts below as necessary.

---

[3] Md. Code Ann. (2001, 2018 Repl. Vol.), Crim. Proc. ("CP") §§ 16-101–403.

**STANDARD OF REVIEW**

In CINA and TPR cases, this Court uses three interrelated standards of review. *In re Yve S.*, 373 Md. 551, 586 (2003). The Supreme Court of Maryland has described these interrelated standards as follows:

> When an appellate court scrutinizes factual findings, the clearly erroneous standard of [Rule 8-131(c)] applies. [I]f it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion.

*Id.* (quoting *Davis v. Davis*, 280 Md. 119, 126 (1977)).

Additionally, we review a trial court's denial of a motion for reconsideration for abuse of discretion. *Wilson-X v. Dep't of Hum. Res.*, 403 Md. 667, 674-75 (2008). To warrant reversal, however, "the complaining party must show *prejudice* as well as *error*." *Sumpter v. Sumpter*, 436 Md. 74, 82 (2013) (quoting *Harris v. David S. Harris, P.A.*, 310 Md. 310, 319 (1987) (internal quotation marks omitted)).

**DISCUSSION**

**I. THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION IN STRIKING FATHER'S UNTIMELY OBJECTION.**

**A. The Parties' Contentions**

Father argues that the juvenile court abused its discretion by not finding "good cause" under Maryland Rule 11-307(b)(3) to accept his untimely filing, because C.'s ineffective assistance of counsel precluded him from complying with the 30-day

5

deadline.[4]  The Children, through counsel, oppose Father's argument, contending that no good cause existed in the record to justify accepting Father's untimely objection.  The Department does not address the court's striking of Father's objection in its brief.

## B.    Analysis

Pursuant to Maryland Rule 11-307(b)(1)(A), an objection to a guardianship petition shall be filed within 30 days after service of the show cause order.[5]  "[I]f a notice of objection is not filed within [30 days], the party will be deemed to have consented to the guardianship."  Md. Rule 11-307(b)(2).  "In the event of a late-filed objection, the court may deem the filing timely for good cause shown."  Md. Rule 11-307(b)(3).

What constitutes "good cause" has not been interpreted in the context of deemed consents in guardianship matters.  It has, however, been construed in other instructive contexts.  For example, to determine if "good cause" exists to waive the notice

---

[4] Father also argues that initial difficulty serving Father and C. with the show cause orders caused the delay in filing his objection.  This is not so.  The 30-day deadline to file a timely objection was calculated from October 2, 2024, the date on which Father was properly served.  Thus, any issues in locating and serving Father prior to that date did not impact Father's ability to file a timely objection.  Moreover, because C. did not represent Father in the CINA proceedings, the Department did not have an obligation to serve her with the show cause orders.  *See* Md. Code Ann. (1984, 2019 Repl. Vol.), Family Law ("FL") § 5-334(b) (requiring that a show cause order be served upon "(1) each of the child's living parents who has not consented to the adoption; (2) each living parent's last attorney of record in the CINA case; and (3) the child's last attorney of record in the CINA case").

[5] The filing deadlines for personal service outside of Maryland or the United States and for service via publication do not apply to this case.  Md. Rules 11-307(b)(1)(B)–(D).

requirement under the Local Government Tort Claims Act,[6] courts inquire "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rounds v. Maryland–Nat'l Cap. Park & Planning Comm'n*, 441 Md. 621, 645 (2015) (internal citation and quotation marks omitted). The burden is on the plaintiff to show good cause, and the court's decision is a discretionary one. *Id.*

In conducting this good cause inquiry, a court may consider as appropriate excusable neglect or mistake, serious physical or mental injury, location out of state, inability to retain counsel in a complex case, ignorance of the notice requirement, and misleading representations by a government representative. *Mayor and City Council of Baltimore v. Stokes*, 217 Md. App. 471, 486-87 (2014) (citation omitted).

Applying these factors to assess good cause here, we hold that the juvenile court did not abuse its discretion in finding that there was not good cause to permit Father's late objection. At the hearing on the Department's motion to strike, C. argued:

> [C.]: Your Honor, this matter was first before CINA attorney, [B.] [B.] -- now, he's not here, so you know, I don't know if it's going to be hearsay or whatever, but [B.] was not able to contact [Father] after 6/13/24.
>
> He also -- well, he directed [Father] -- on 6/11/24, directed him to call the PD's office for an intake, and [Father] did that, in fact, before he was served. And also -- and right after [B.]

---

[6] For a prior unreported application of this comparison, *see In re N.P.*, No. 1768, Sept. Term 2023, 2024 WL 1825152 at *4-6 (Md. App. Apr. 26, 2024) (holding that incarceration before the objection deadline was not sufficient for a finding of good cause pursuant to the Local Government Tort Claims Act).

was served, he contacted the PD's office for an intake, it appears, on July 2nd, '24.

I believe that because of that -- and he was sent a letter stating that he would have an attorney, namely me, that he at -- from that point, when he was actually served while incarcerated, that he was led to believe that, in fact, he had a lawyer because he had gone through the intake process.

He -- I've never spoken to [Father]. I've tried calling him several, several, several times. [B.] tried to call him. And after he was served -- right after he was served in -- while incarcerated, I, not knowing that he was in fact served at that time, I fell ill the end of -- around November 2nd and was finally hospitalized on the 7th.

And I had no means of reaching out to [Father] at that time, but I believe that he somehow, by going through the intake process, deemed that as having objected. That's the only thing I can glean because he was served while incarcerated and did not object.

But I believe that he was somehow misled. Now, why I say that is this: It's my understanding that it's the policy of the Public Defender's office that, in fact, a client has to file a notice of objection. And it has to go trickle down to the PD's office.

The client should not have, from my perspective, should not have gone through an intake process until he was, in fact, was served and filed an objection. And that didn't happen until October. But he actually went through the intake process in July. And I was not at leave to file an objection on his behalf before that because I had never been given a chance to speak with him about what his position would be after he was, in fact, served. So, I would ask for leave of the [c]ourt to, in fact, allow the Public Defender's Office to continue defending Father in this matter and would ask for the [c]ourt to -- I know the statute -- what the statute says.

I'm asking for the [c]ourt to -- in equity, to please allow [Father] to continue to be a part of this case. At this point, we actually do know where he is.

8

C. did not present any evidence regarding serious physical or mental injury, location out of state, inability to retain counsel in a complex case, or misleading representations by a government representative. Therefore, these factors do not apply here. We interpret C.'s speculation that Father believed he had objected because he completed the OPD's intake process to suggest that Father committed an excusable mistake. C. admitted, however, that she had "never spoken to" Father—much less consulted with him about the guardianship proceedings. The court ultimately treated C.'s statement as speculation, explaining that:

> [W]hile this [c]ourt certainly is sympathetic to some of the challenges [C.] laid out, there is no either extraordinary circumstances or circumstances that can, in this [c]ourt's opinion, justify a delay of 65 days when the rules, under Maryland Rule 11-307(b)(1), clearly lays out that an objection needs to be filed within 30 days after a show cause has been served under Maryland [Rule] 11-307(b)(2), that if an objection is not timely filed, then it's deemed to have been consented to. . . . And we're not talking about a few days. We're not talking about some mishap with the [mail].

Given the extended length of delay in filing an objection, C.'s speculation about what she believed to be Father's mistaken understanding (despite never speaking to Father), and the absence of any other evidence proffered to show good cause, we discern no abuse of discretion. Accordingly, we hold that the juvenile court reasonably exercised its discretion in granting the Department's motion to strike Father's late objection.

9

## II. FATHER'S MOTION FOR RECONSIDERATION DID NOT SUFFICIENTLY ALLEGE PREJUDICE.

### A. The Parties' Contentions

We now turn to Father's argument that the juvenile court erred in denying his ineffective assistance of counsel claim. Father specifically asserts that C. provided ineffective assistance of counsel "by failing to consult with Father; by failing to file a timely objection to the Department's Petition; and by failing to make the appropriate arguments against the Department's Motion to Strike." Father requests that this Court order the juvenile court to give him "permission to file a belated" objection.[7]

---

[7] At oral argument before this Court, Father's counsel also argued that an attorney's failure to file a timely writ of *certiorari* in *Coyle v. State*, 490 Md. 312 (2025), is analogous to C.'s failure to file a timely objection here, and should similarly be presumed to be prejudicial.

We are unpersuaded by Father's analogy to *Coyle*. Contrary to Father's argument, *Coyle* "do[es] not conclude that prejudice is presumed by counsel's failure to file a petition for a writ of *certiorari*." *Id.* at 357. In *Coyle*, the petitioner's appellate attorney averred in an affidavit that he discussed filing a writ of certiorari with the petitioner and the OPD. *Id.* at 323. Here, because there are no such averments in the record, *Coyle* is distinguishable from Father's situation.

We also note that guardianship proceedings must contend with another consideration—i.e., the child's best interest—that is not relevant in criminal proceedings. *See In re Ta'Niya C.*, 417 Md. 90, 110-11 (2010) (recognizing that a court's TPR decision must bring into "harmonious balance" parental rights and the best interest of the child). Thus, it is uncertain how far (if at all) a presumption of prejudice afforded to a criminal defendant should extend to a parent in a TPR case. *See id.*; *see also In re Jayden G.*, 433 Md. 50, 66-72 (2013) (acknowledging that there is an "interesting interplay between the parent's right to parent and the child's best interests[,]" and explaining that "[i]n balancing fairness to the parent and fulfilling the needs of the child, the child prevails") (citation and quotation marks omitted).

The Department similarly argues that "[t]he juvenile court abused its discretion in declining to consider the merits of Father's ineffective assistance of counsel claim[,]" but unlike Father, asks that the matter be remanded for an evidentiary hearing to decide only whether C.'s assistance was ineffective.

Conversely, the Children assert that there were no extraordinary circumstances excusing Father's late objection, and that Father's claims of ineffective counsel are unsubstantiated:

> At no relevant stage of this case is there evidence that Father's circumstances were extraordinary; all that existed were the unsubstantiated surmisal of [C.] (at the January 22, 2025, hearing on the Department's Motion to Strike Late Filing) and unsubstantiated averments of [L.] (through the Motion to Reconsider and February 18, 2025, hearing).

The Children further argue in their reply brief that, pursuant to Maryland Rule 11-104(e), Father needed to allege prejudice by supplementing his motion to reconsider with an affidavit. For this reason, the Children request that this Court affirm the judgment of the juvenile court.

### B. Analysis

#### 1. *The juvenile court erred in holding that Father did not have a right to counsel.*

At the outset, we note that all parties, as well as this Court, agree Father had a statutory right to counsel. Pursuant to the Public Defender Act, "[i]ndigent defendants or parties shall be provided representation . . . in[] . . . a family law proceeding . . . including[] for a parent, [in] a hearing in connection with guardianship or adoption[.]" CP § 16-204(b)(1)(vi)(1). There is no statutory text suggesting a party must file an

11

objection prior to securing this legislatively created right to counsel, and "we do not add words in an effort to extend the statute's meaning." *Alcoa Concrete & Masonry v. Stalker Bros. Inc.*, 191 Md. App. 596, 611 (2010). *Cf. Stovall v. State*, 144 Md. App. 711, 721 (2002) ("A defendant has a broader right to counsel under the Maryland Public Defender Act than under the United States Constitution."). Maryland Rule 11-308(a) additionally sets out a broad right to counsel, entitling all parents in guardianship proceedings terminating parental rights to representation. We, therefore, hold that Father had a right to counsel in the underlying guardianship case and that the juvenile court erred in holding he did not.[8]

### 2.    *Father's motion for reconsideration did not sufficiently allege prejudice.*

Implicit in Father's right to counsel is the right to effective counsel. *In re Chaden M.*, 422 Md. 498, 509 (2011). For an attorney's assistance to be ineffective, the attorney's performance must be deficient or below an objective standard of reasonableness. *Davis v. State*, 490 Md. 359, 378-79 (2025). The attorney's deficient performance must also prejudice the attorney's client. *In re Parris W.*, 363 Md. 717, 727-28 (2001); *see also In re J.R.*, 246 Md. App. 707, 758 (2020) (applying the two-prong test for ineffective assistance of counsel claims as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to TPR and CINA proceedings). We may presume prejudice when there is an "egregious" error and a "practical impossibility of proving

---

[8] There was no dispute that Father was indigent.

prejudice." *Sumpter*, 436 Md. at 88 (quoting *Barksdale v. Wilkowsky*, 419 Md. 649, 660 (2011) (quotation marks omitted)).

Pursuant to Maryland Rule 11-104(e), in juvenile proceedings, motions "based on facts not contained in the record . . . *shall* be supported by affidavit[.]" (Emphasis added.) *Cf. Scully v. Tauber*, 138 Md. App. 423, 431 (2001) (reversing a trial court's denial of a motion to vacate when the court considered facts in an opposition to the motion that were not in the record and unsupported by an affidavit, as required by Maryland Rule 2-311(d)).[9]

In the present case, there is nothing in the record evincing Father's desire to object to the guardianship proceedings before the objection deadline. Furthermore, Father did not file an affidavit with his motion for reconsideration averring that he wished to object before the deadline. *See* Md. Rule 11-104(e). While we acknowledge that the juvenile court's error was significant, Father was still obligated to demonstrate that he was prejudiced by C.'s allegedly ineffective assistance by citing to existing facts in the record or, alternatively, by submitting an affidavit supporting his motion pursuant to Maryland Rule 11-104(e). Given Father's failure to do either, we conclude that Father's ineffective assistance of counsel claim did not sufficiently allege prejudice, and, therefore, decline to reverse the juvenile court's denial of Father's motion for reconsideration.

---

[9] Maryland Rule 11-104(e) is derived from Rule 2-311(d).

**CONCLUSION**

We hold that the juvenile court did not abuse its discretion in granting the Department's motion to strike Father's late objection. We further hold that the juvenile court erred in holding that Father did not have a right to counsel. Despite this error, because Father did not sufficiently allege prejudice, we affirm for a different reason the court's denial of Father's motion for reconsideration.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**